7 A.3d 690

**Emerson DAVIS, Jr.**

v.

**STATE of Maryland.**

**No. 659, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Nov. 1, 2010.

82

Sherrie B. Glasser (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Brian S. Kleinbord (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: EYLER, JAMES R., WOODWARD, ZARNOCH, JJ.

WOODWARD, J.

Appellant, Emerson Davis, Jr., was charged in the Circuit Court for Wicomico County with one count of second degree sexual offense, two counts of second degree assault, and two counts of fourth degree sexual offense, all arising out of two incidents that occurred on August 13, 2006, involving two different individuals. On April 23, 2007, appellant appeared before Judge Kathleen Beckstead and presented a binding plea agreement that had been reached between appellant and the State. Judge Beckstead rejected the plea agreement and transferred the case to Judge Donald Davis to conduct a jury trial. Appellant attempted to present the plea agreement to Judge Davis, who refused to consider the agreement. The case proceeded to trial before a jury, and appellant was convicted of all charges. On May 11, 2007, appellant was sentenced to a total of eleven years' incarceration, with all but eighteen months suspended, and four years of supervised probation.

On appeal, appellant presents two issues for our review, which we quote:

1. Whether the trial court abused its discretion in refusing to consider the plea agreement reached between Appellant and the State[.]

2. Whether the trial court violated the presumption of Appellant's innocence in sending a verdict sheet to the jury that listed the first option as "guilty"[.]

Finding no error, we shall affirm.

## BACKGROUND

### The Crime

Appellant was a counselor at the Hudson Center, a drug treatment facility in Wicomico County. On August 13, 2006, between 2:00 and 3:00 p.m., appellant requested that a patient at the facility ("Patient A")[1] go to appellant's office to pick up a paper for another patient. While Patient A was in the office, appellant locked the door, pulled Patient A close to him, and kissed her. Appellant, without Patient A's consent, then pushed her into a chair, pulled down her shorts, performed oral sex on her, and penetrated her digitally.

That same day, at approximately 4:00 p.m., appellant paged another patient at the Hudson Center ("Patient B") and requested that she come to appellant's office. After Patient B arrived at appellant's office, appellant, without Patient B's consent, pulled up her shirt and fondled her breasts. When another Hudson Center employee knocked on the door to the office, Patient B stood up and began to walk out of the office. As Patient B was exiting, appellant smacked Patient B on her buttocks.

By criminal information, filed October 10, 2006, appellant was charged with one count of second degree sexual offense,

---

1. Because the underlying crime is not central to the issues presented in this appeal, we have elected not to identify the victims of the sexual offenses.

one count of second degree assault, and one count of fourth degree sexual offense as to Patient A, and one count of second degree assault and one count of fourth degree sexual offense as to Patient B.

## The Procedure

On April 23, 2007, appellant's case was called before Judge Beckstead for a jury trial. At that time, appellant presented to the judge a binding plea agreement that had been reached between appellant and the State. The terms of the agreement provided that appellant would plead guilty to one count of second degree assault and one count of fourth degree sexual offense. Appellant would receive a sentence of ten years' incarceration, with all but eighteen months suspended, for second degree assault and a concurrent twelve months' incarceration for fourth degree sexual offense. Appellant would be placed on a three-year term of probation, but would not be required to register as a sex offender. Judge Beckstead was advised that the victims had been consulted and that they had found the plea to be acceptable.

The State then articulated its willingness to enter into the plea agreement, in part because the victims were "absolutely content" with the plea and "would rather not have to go to trial." Judge Beckstead advised appellant of the rights that he would be giving up by pleading guilty, the allegations against him, and the maximum penalties of the charged offenses. Appellant responded to Judge Beckstead that he understood his rights, the allegations, the penalties, and the terms of the agreement.

Judge Beckstead then inquired as to appellant's acknowledgment of guilt for the offenses to which he was pleading guilty. Judge Beckstead was advised by defense counsel that appellant would "admit[ ] he is guilty contingent upon acceptance of the agreement" by the court. Upon questioning by the court, defense counsel acknowledged that

the plea was a "straight guilty plea" and not an *Alford* plea.[2] In an effort to further clarify appellant's position, Judge Beckstead asked defense counsel: "So, I have a guilty plea that is not really a guilty plea, because [appellant] is not going to acknowledge his guilt. Is that right?" Defense counsel responded: "That's correct, Your Honor." As a result, Judge Beckstead rejected the plea agreement. Because Judge Beckstead was scheduled to conduct another jury trial, she transferred the case to Judge Davis for trial.

The case was called before Judge Davis on the same day that Judge Beckstead rejected the plea agreement. After a discussion with counsel off the record, Judge Davis summarized the procedural posture of the case:

> Let me just for, I guess, for the record indicate that I had a-here at the bench but not on the record, a conversation with counsel regarding the [appellant's] case. And I think, I will summarize it this way. That the parties reached a binding plea agreement, which was presented to Judge Beckstead this morning in whatever courtroom she is in, and Judge Beckstead rejected it.
>
> As a result of which, the case has been transferred to this courtroom and to me for jury trial, and to whatever extent this would have any bearing, I would note further that I think the Hicks date expires on Wednesday, perhaps, or Thursday of this week, two or three days from now, I guess.
>
> \* \* \*
>
> And the parties wish to present the plea agreement to this Court, whether the original or modified version, I don't really know, and I don't think that's material.
>
> And the defense theory is, and I am not sure if the State completely agrees with this or disagrees with it, but the defense theory is that the defendant has a Constitutional

---

**2.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea is a "specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment." *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990).

right to present the binding plea agreement to every Judge in the State of Maryland, if necessary, until they are able to find one who will accept it, and I'm not sure of this nuance, but if there is only one Judge left in the State of Maryland, I'm not sure what the defense position is as to whether they're also entitled to present it to him or her, but at least up until there is only one left, the defense is entitled to have that presented to each Judge, as I say, until they are able to find one who will accept it.

Defense counsel agreed that the above was a "fair summary" of his position, except that he was not claiming a constitutional right; rather, he claimed a right flowing from Maryland Rule 4–243.

Judge Davis elaborated on his interpretation of Rule 4–243:

So I think where we are—the Court's view as to where we are is that [appellant] does not have a right under this Rule to present this plea to every Judge in this County or to every Judge in this Circuit or to every Judge in this State until the parties find one who is willing to accept the plea agreement.

I think what the Rule contemplates is that it's presented to a Judge. The Judge either accepts i[t] or does not. The defendant then being advised that the Court is not bound by the agreement, that the defendant can withdraw the guilty plea, or if he persists in the plea of guilty, that the sentence may be less favorable than that which is contemplated or provided in the plea agreement. And the defendant then makes his choice at that time whether to plead guilty and take his chances on what the sentence would be or plead not guilty and go to trial.

If he cho[o]ses to plead not guilty, then the original Judge, Judge Beckstead, can still hear the jury trial, except in this case, she can't because she is conducting another jury trial, and she can't do both at the same time or both the same day, or if either party objects, then it goes to a second Judge, but not for the purpose of reconsidering the plea agreement but solely for the purpose of conducting the

jury trial which would have been conducted in this case by Judge Beckstead except that she is not available to do that.

Defense counsel disagreed with Judge Davis's interpretation, stating that "we are asserting a right to present that same binding agreement to Your Honor pursuant to Rule 4–243." Defense counsel then asked Judge Davis to consider accepting or rejecting the plea agreement. Judge Davis declined to do so.

Defense counsel thereupon stated:

Accordingly, now that the Court has said that it will not accept the binding agreement, we assert a right under the subject Rule of Procedure to present this binding agreement to another member of the judiciary besides Your Honor. We respectfully request that we be allowed to do so. And we would suggest that if we are compelled to go to trial, that we are by no means agreeably waiving that right, obviously, short of an interlocutory appeal, we are required to comply with the Court's orders.

But I want to make sure that I'm not in any way, shape or form waiving what I believe is a right to present this to another judge who would hopefully listen to the terms of it and having heard the terms would agree that it's acceptable.

Thank you.

Judge Davis corrected defense counsel by stating that he had not rejected the plea agreement because "Judge Beckstead rejected the plea agreement." Judge Davis reiterated: "That's not why the case is before me. . . . It is not to hear the plea agreement again. It's to conduct the trial."

Defense counsel then proceeded to restate the terms of the plea agreement and asked the court to accept the plea. Judge Davis declined to do so, again stating, "I'm not accepting or rejecting the plea agreement. That's already been done." Defense counsel "assert[ed] the right to present the agreement" to the court. Judge Davis responded:

[T]his Court's view is that I'm not accepting or rejecting the binding plea agreement. That decision was already made by Judge Beckstead, and it is here now for [appellant] to

either withdraw his plea, his guilty plea, or if he persists— or he can persist in his plea of guilty, but it would be on the basis that the disposition may be less favorable than under the terms of the plea agreement that were presented to and rejected by Judge Beckstead. So that's really where we are.

At this point, defense counsel stated that appellant "would ask the Court to recuse itself and allow this plea to be presented to another member of the judiciary." If the case was going forward that day, defense counsel advised that appellant would "stand silent as to any further plea." Judge Davis "den[ied] those requests with respect to continuing the matter for presentation to another Judge," and entered a not guilty plea on appellant's behalf. The case proceeded to trial before a jury.[3]

On April 24, 2007, appellant was convicted of all charges, and on May 11, 2007, appellant was sentenced to ten years' incarceration for the second degree sexual offense as to Patient A, with all but one year suspended, and a consecutive term of one year, with all but six months suspended, for the fourth degree sexual offense as to Patient B. The court merged the remaining counts, ordered appellant to register as a sex offender, and imposed a four-year term of supervised probation to commence upon appellant's release. This timely appeal followed.

## DISCUSSION

### I.

### MARYLAND RULE 4–243

Rule 4–243 provides in relevant part:

---

**3.** In the course of his colloquy with defense counsel, Judge Davis commented:

... [I]t's an interpretation issue of the Rule that would be helpful to the State and defense Bar to know what the answer is.

So maybe we will get one out of the Court of Special Appeals on this.

We shall provide guidance on the issue.

(a) **Conditions for agreement.** (1) Terms. The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

(A) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

(B) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

(C) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

(D) That the State will not charge the defendant with the commission of certain other offenses;

(E) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

(F) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

\* \* \*

(c) **Agreements of sentence, disposition, or other judicial action.** (1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of plea agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) Rejection of plea agreement. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d).

(5) Withdrawal of plea. If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

To summarize, Rule 4–243 provides that a "defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition." Md. Rule 4–243(a)(1). The "conditions" include the State amending the charges, nolle prossing or stetting a charge or charges, the State's Attorney agreeing to an entry of a judgment of acquittal on a charge or charges, the State declining to charge the defendant for certain offenses, or the State's Attorney recommending or not opposing a certain disposition or sentence. Md. Rule 4–243(a)(1)(A)–(E).

Of particular importance to the instant case is the condition where "the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration...." Md. Rule 4–243(a)(1)(F). Where the plea agreement is premised on the type of condition described in Rule 4–243(a)(1)(F),

> the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

Md. Rule 4–243(c)(1). "The agreement ... is not binding on the court unless the judge to whom the agreement is presented approves it." Md. Rule 4–243(c)(2).

"If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement...." Md. Rule 4–243(c)(3). "If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement." Md. Rule 4–243(c)(4). If the defendant withdraws the plea and enters a plea of not guilty, the judge "to whom the agreement was presented may not preside at a subsequent *court* trial of the defendant on any charges involved in the rejected plea agreement," provided that an objection is made by the defendant or the State "at that time." Md. Rule 4–243(c)(5) (emphasis added).

## The Parties' Contentions

Before addressing appellant's arguments, we must first discern exactly what are those arguments, because they have undergone several permutations since first raised in the trial court.

Defense counsel below argued that appellant had a right, based on Rule 4–243, to present the binding plea agreement to every judge in the State of Maryland until appellant was able to find a judge who would accept it. Thus appellant claimed a right to present the plea agreement to Judge Davis because Judge Beckstead had rejected the agreement. Appellant also asserted the "right to have the Court rule whether or not it [would] accept [the plea agreement]." According to appellant, if Judge Davis rejected the binding plea agreement, then "under the subject Rule of Procedure [appellant had a right] to present this binding agreement to another member of the judiciary. . . ." When Judge Davis refused to accept or reject the binding plea agreement, appellant asked Judge Davis to recuse himself and to "allow this plea to be presented to another member of the judiciary," both of which requests were denied.

In his brief before this Court, appellant argues that Judge Davis abused his discretion when he refused to consider appellant's binding plea agreement. Specifically, appellant contends that "Maryland Rule 4–243 expressly vests in trial courts the discretion to consider the terms of a binding plea agreement and either accept or reject them. The rule does not permit a trial court the option of refusing to consider an agreement." Further, according to appellant, "[t]he plain language of the Rule does not limit the number of times that a defendant is entitled to present a plea agreement, or the number of judges who are permitted to consider a plea agreement." In a footnote in his brief, however, appellant states that, "[i]f Judge Davis had considered and rejected Appellant's plea, Appellant would not be permitted, under Md. Rule 4–243, to go to every judge in the jurisdiction to present the plea again . . . ."

At oral argument before this Court, appellant further refined his argument, stating that the case *sub judice* was "not about going to every judge in the State," but instead concerned the trial court's failure to exercise its discretion when, "by luck of the draw," appellant's case was transferred from Judge Beckstead to Judge Davis. According to appellant, if

Judge Beckstead had not transferred the case to Judge Davis, appellant would have had no right to have his plea agreement heard before another judge. Appellant commented that "he [n]ever intended to be able to present [the plea agreement] to every judge in the state," and any argument to the trial court to that effect was made for preservation and may have been "misconstrued" by the trial court. Appellant concluded that the issue before this Court was whether appellant had a right to have Judge Davis consider the plea agreement where the case had been "lawfully transferred to [Judge Davis] for scheduling reasons."

The State responds that the trial court properly complied with Rule 4–243 when it heard the terms of the binding plea agreement, rejected it, and proceeded to trial. According to the State, after Judge Beckstead rejected the plea agreement, Judge Davis, who was assigned to hear the trial, "was under no obligation to hear the specific agreement already rejected by a member of the same bench." The State contends that "the Rule merely requires that the plea agreement is 'presented to a Judge,' as in a single judge." Furthermore, according to the State, "[w]hile Judge Davis was certainly free to consider the plea agreement, and the Rule did not preclude him from doing so, his refusal to do so does not amount to an abuse of discretion." The State claims that "Rule 4–243 imposes no requirement on what a second, third, or fourth judge must do when the case comes before them." Finally, the State argues that the appellant's interpretation would "encourage forum-shopping" and would be inconsistent with the intent of the drafters of Rule 4–243.

In light of the arguments made by appellant in the trial court and this Court, we first will address whether Rule 4–243 embodies a right of a criminal defendant to present a binding plea agreement to another judge after the plea agreement has been rejected by the first judge. We will then discuss whether, if such right does not exist, a defendant, nevertheless, has the right under Rule 4–243 to have a plea agreement considered by a second judge, after rejection by the first judge,

when the defendant's case is transferred to the second judge because of scheduling or other reasons.

## Interpretation of the Maryland Rules

The principles governing the interpretation of the Maryland Rules are well established. In *Johnson v. State*, 360 Md. 250, 264–65, 757 A.2d 796 (2000), the Court of Appeals stated:

> With respect to the interpretation of the Maryland Rules, this Court has stated that, "[t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules." In order to effectuate the purpose and objectives of the rule, we look to its plain text. To prevent illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independently construing its subparts. If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule.

> The venerable plain meaning principle, central to our analysis, does not, however, mandate exclusion of other persuasive sources that lie outside the text of the rule. We have often noted that looking to relevant case law and appropriate secondary authority enables us to place the rule in question in the proper context.

(Citations omitted).

"[W]e must examine the 'words of the rule, giving them their ordinary and natural meaning.'" *Zetty v. Piatt*, 365 Md. 141, 152, 776 A.2d 631 (2001) (quoting *State v. Harrell*, 348 Md. 69, 79–80, 702 A.2d 723 (1997)). "We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used." *Brown & Williamson Tobacco Corp. v. Gress*, 378 Md. 667, 676, 838 A.2d 362 (2003).

In *Hoang v. Hewitt Ave. Assocs.*, 177 Md.App. 562, 588, 936 A.2d 915 (2007), this Court added:

> Where the language of the rule is clear and unambiguous, our analysis ends. However, the goal of such analysis is

always to discern the legislative purpose. [ ] To that end we must consider the context in which [ ] the rule appears including related statutes or rules and relevant legislative history.

(Citations and quotations omitted).

■ In the end, "[o]ur mission is to give the rule a reasonable interpretation in tune with logic and common sense." *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994).

### Analysis

■ We begin our analysis by examining the plain language of Rule 4–243. *Morales v. Morales,* 111 Md.App. 628, 632, 683 A.2d 1124 (1996), *cert. denied,* 344 Md. 567, 688 A.2d 446 (1997). Subsection (a)(1)(F) of Rule 4–243 states that "the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to *a judge* for consideration. . . ." (Emphasis added). In effectuating that submission, "the defense counsel and the State's Attorney shall advise *the judge* of the terms of the agreement. . . ." Rule 4–243(c)(1) (emphasis added). *"The judge* may then accept or reject the plea. . . ." *Id.* (emphasis added). "If the plea agreement is rejected, *the judge* shall inform the parties of this fact and advise the defendant. . . ." Rule 4–243(c)(4) (emphasis added).

The Rule thus refers only to a single judge considering a binding plea agreement. Under the rules of construction governing the Maryland Rules, Rule 1–201(d) provides, in relevant part, that "[w]ords in the singular include the plural . . . *except as necessary implication requires."* (Emphasis added). We believe that the "necessary implication" of the language of Rule 4–243 requires a singular construction not only because of the procedural process contemplated by the rule *(i.e.,* submitting a binding plea agreement to a judge who then accepts or rejects it), but because of the practical impossibility of presenting a binding plea agreement to more than one judge at the same time.

The Rule also does not mention, or imply, a series of judges reviewing the plea agreement. The Rule establishes what types of agreements may exist, which agreements must be submitted to the court for review and how, and what consequences flow from having the court accept a plea agreement (section (c)(3)) or reject it (section (c)(4)). If the plea agreement is rejected by the court, section(c)(4) specifies two courses of action open to the defendant: the defendant may withdraw the guilty plea or "persist in the plea," the latter resulting in a disposition that may be less favorable than the plea agreement. Rule 4–243 does not provide any other option to the defendant in the event that the plea agreement is rejected. There simply is no provision for the defendant to seek another review by a different judge or repeated reviews by a series of judges.

The history of Rule 4–243 was summarized by the Court of Appeals in *Allgood v. State,* 309 Md. 58, 522 A.2d 917 (1987). Speaking for the Court, Judge Charles Orth, Jr. wrote:

Maryland Rule 733 (now Rule 4–243) was proposed by the Standing Committee on Rules of Practice and Procedure in its Fifty-third Report under date of 29 December 1975. The Report stated that in drafting the proposed Chapter 700 rules, it had "utilized a great deal of current reference material," including "the ABA Standards relating to the Administration of Criminal Justice" and the "Federal Rules of Procedure." In reference to proposed Rule 733, "Plea Agreements," it explained:

This Rule recognizes for the first time in a Rule, that the practice of "plea bargaining" exists and establishes a degree of control. The draft Rule encompasses the traditional types of plea agreements which involve pleas to specific counts and recommendations of State's Attorneys. The Rule adopts the ABA standard permitting the defendant and the State to present to the court, on the record, a plea agreement which incorporates a specific sentence or other disposition. If the court accepts the agreement, it is bound by the terms relating to sentence and disposition. If the court rejects the agreement, the defendant

may withdraw his plea and stand trial before a different judge.

The present Rule 4–243 made no changes of substance in the provisions of former Rule 733 as adopted.

*Id.* at 80 n. 3, 522 A.2d 917.

As Judge Orth's history of Rule 4–243 makes clear, the Rule was the result of a studied consideration by the Rules Committee relying on certain ABA standards. *Id.* We have found no evidence that the Rules Committee intended the rule to establish a right for a defendant to repeatedly present his plea agreement to judge after judge. We have reviewed the entirety of the Rules Committee's minutes on the Rule and have not unearthed any evidence that it intended such a right. If the Rules Committee had intended to create for the defendant the right of going from judge to judge seeking approval of his plea agreement, the Rules Committee would not have done so casually or inadvertently.

We also have reviewed the ABA Standards for Criminal Justice (both the Second and Third Editions) and found no mention or hint of such a right. Rule 11 of the Federal Rules of Criminal Procedure is devoid of a scheme or right for a defendant to repeatedly present his plea agreement until it is accepted by a judge. Finally, we found no mention in any of the treatises on criminal procedure of a right to repeatedly present a plea agreement to judge upon judge until accepted.

Therefore, we hold that Rule 4–243 does not create a right for a defendant to present a binding plea agreement for consideration by a second judge once the plea agreement has been rejected by the first judge. Stated otherwise, a defendant's right to present a binding plea agreement to the trial court under Rule 4–243 ends after one judge has considered such agreement and either accepted or rejected it. Accordingly, appellant had no right under Rule 4–243 to present to Judge Davis, and have him consider, a binding plea agreement after such agreement had been rejected by Judge Beckstead.

Our holding, however, does not suggest that Rule 4–243 prohibits a trial judge, like Judge Beckstead, from transferring, either *sua sponte* or upon the defendant's request, a

rejected plea agreement to another judge for consideration by that judge. Nor are we saying that Rule 4–243 prevents a trial judge, like Judge Davis, from considering a binding plea agreement after it has been rejected by another judge. Again, the plain language of Rule 4–243 does not forbid either of such actions. We cannot read any such prohibition into the rule, for to do so would violate the canon of statutory construction that a court " 'is not at liberty to add to the language of the law.' " *Simpson v. Moore,* 323 Md. 215, 226, 592 A.2d 1090 (1991) (quoting *Rogan v. B. & O. R.R. Co.,* 188 Md. 44, 54, 52 A.2d 261 (1947)); *see also Nelson v. State,* 187 Md.App. 1, 13, 975 A.2d 298 (2009) (" 'We may not read language into a statute that is not there, even if we are not satisfied with the outcome of the case.' ") (quoting *Johnson v. Mayor & City Council,* 387 Md. 1, 14, 874 A.2d 439 (2005)).[4]

## The "Luck of the Draw"

Before this Court, appellant accepts the principle that, once a binding plea agreement has been rejected by a

---

**4.** Of course, apart from Rule 4–243, the right of a trial judge to transfer a binding plea agreement after rejection or to consider a binding plea agreement previously rejected by another judge may be granted or denied by administrative orders issued by the County Administrative Judge pursuant to the latter's authority to institute a case management plan for criminal cases. *See* Md. Rule 16–202(b) (stating that the County Administrative Judge shall develop, implement, and monitor "a case management plan for the prompt and efficient scheduling and disposition of actions in the circuit court."). For example, under the Criminal Differentiated Case Management Plan in the Circuit Court for Montgomery County, any "plea active" judge in the criminal/general rotation or a judge who is available via a resolution conference is authorized to accept a binding plea agreement prior to the Pretrial date. This authorization has been interpreted to permit the transfer of a binding plea agreement from a "plea active" judge who rejected it to another "plea active" judge for consideration by the latter. Thus, prior to the Pretrial date, a defendant in Montgomery County has the right, apart from Rule 4–243, to have a binding plea agreement presented and considered by a another judge after such agreement has been rejected by a previous judge. However, "[o]nce the Pretrial Hearing has been held and the trial and motions dates confirmed, the only judge available for the taking of a plea is the assigned plea judge." Our opinion in the case *sub judice* is not meant to call into question any such case management plan.

judge, a defendant does not have the right under Rule 4–243 to have such agreement presented to a second judge. Nevertheless, appellant argues that, because his case was transferred to Judge Davis by Judge Beckstead after she rejected the plea agreement, he was entitled to have Judge Davis consider the plea agreement and either accept or reject it. Moreover, appellant claims that he was not "judge-shopping," because his case was transferred by the "luck of the draw" when Judge Beckstead had a scheduling conflict and could not conduct the trial. Although creative, appellant's argument does not withstand close scrutiny.

In the case *sub judice,* Judge Davis advised appellant three times that, because Judge Beckstead had rejected the plea agreement, appellant's case was "before me to do one of two things, I guess. One is to hear the plea agreement without being bound by the binding nature of it. . . . Or it is to conduct the trial." Judge Davis also repeatedly told appellant that he was "not accepting or rejecting the plea agreement. *That's already been done."* (Emphasis added). Judge Davis took the position, and we think correctly so, that Rule 4–243 provided for the presentation of a binding plea agreement "to a Judge," which in appellant's case was Judge Beckstead. Once the plea agreement was rejected by Judge Beckstead, appellant had the choice of either withdrawing his plea and going to trial or persisting in the plea with the court not being bound by the plea agreement. *See* Rule 4–243(c)(4) & (5). When Judge Beckstead was not available to conduct the trial, Judge Davis in effect stepped into the shoes of Judge Beckstead to complete the requirements of Rule 4–243. In other words, Judges Beckstead and Davis functioned as one judge under Rule 4–243—one considering and rejecting the binding plea agreement and the other conducting the trial or accepting a nonbinding plea. Thus Judge Davis properly concluded that there was no requirement under Rule 4–243 for him to consider accepting or rejecting the binding plea agreement.

■ In a broader sense, appellant's argument would allow the very principle that he accepts to be easily circumvented.

The holding that we have articulated in this opinion, and one that appellant accepts, states that a defendant does not have a right under Rule 4–243 to present a binding plea agreement to a second judge for consideration by that judge once the plea agreement has been rejected by the first judge. This principle, in our view, necessarily includes two related concepts: (1) when a binding plea agreement is rejected by a trial judge, a defendant does not have a right to have his or her case transferred to another judge for the purpose of having the second judge consider whether to accept or reject such agreement; and (2) if, for whatever reason, a defendant's case is transferred to a second judge after the first judge has rejected the binding plea agreement, the second judge is not required by Rule 4–243 to consider whether to accept or reject the plea agreement.

Appellant disagrees in effect with the second part of our holding, contending that, regardless of what transpired before and regardless of the purpose of the transfer, once a case is assigned to a particular judge, that judge must consider whether to accept or reject a binding plea agreement. If appellant's position is accepted, a defendant could easily have his or her plea agreement presented and considered by every judge in the State of Maryland, or until the agreement is accepted. We shall explain how this would occur.

Under Rule 4–243(c)(5), once the plea agreement is rejected, the defendant has the right to withdraw his or her guilty plea, enter a plea of not guilty, request a court trial, and object to the judge presiding over that trial. In such event, Rule 4–243(c)(5) precludes the judge who rejected the plea agreement from presiding over the court trial of the defendant "on any charges involved in the rejected plea agreement." Of necessity, the defendant's case then would be transferred to another judge for a court trial. In appellant's view, once the case was brought before the newly assigned judge, instead of conducting a court trial, that judge would be required to consider whether to accept or reject the plea agreement. If the plea agreement was rejected, Rule 4–243(c)(5) would be activated

again, and the above process would be repeated *ad infinitum*, or until the plea agreement was accepted.

Therefore, we conclude that, once a binding plea agreement is rejected by a trial judge under Rule 4–243, a defendant does not have the right to have such plea agreement considered for acceptance or rejection by another judge should the defendant's case be transferred to that judge by the "luck of the draw" or for any other reason. Accordingly, Judge Davis did not err in refusing to consider whether to accept or reject appellant's binding plea agreement.

### Abuse of Discretion

Finally, appellant argues that Judge Davis abused his discretion by refusing to exercise the discretion granted to him by Rule 4–243 to consider the terms of the binding plea agreement and either accept or reject such agreement. According to appellant, Rule 4–243 "does not permit a trial court the option of refusing to consider an agreement," and, because appellant lawfully appeared before Judge Davis, Judge Davis was required to consider the binding plea agreement. In support of this argument, appellant cites several Maryland appellate cases for the proposition that "[t]he failure of a trial court to recognize that it may exercise discretion is an abuse of discretion." We are not persuaded by appellant's argument. We shall explain.

We agree with appellant that Rule 4–243 does not give the trial court the option of refusing to accept or reject a binding plea agreement. In the instant case, when appellant's plea agreement was presented to Judge Beckstead, Judge Beckstead exercised the discretion accorded to her under Rule 4–243(c)(1) by considering the agreement and rejecting it when appellant failed to acknowledge his guilt. Thus Rule 4–243(c)(1), which requires the exercise of discretion to accept or reject a binding plea agreement, was satisfied.

When, however, appellant's case arrived in Judge Davis' courtroom. Judge Davis correctly determined that, because Judge Beckstead already had considered appellant's plea

agreement and rejected it, Rule 4–243(c)(1) had been satisfied, and thus he was not required to consider whether appellant's plea agreement should be accepted or rejected. Stated otherwise, because Rule 4–243(c)(1) had been satisfied, there was no discretion for Judge Davis to exercise. The only task required of Judge Davis, as he properly ascertained, was to complete the requirements of Rule 4–243 when a plea agreement had been rejected. *See* Md. Rule 4–243(c)(4) & (5).

The legal authority advanced by appellant in support of his argument does not compel a different result. Again, we agree with the general principle of law advanced by appellant that the failure of a trial court to exercise the discretion accorded to it is an abuse of discretion. *See Beverly v. State,* 349 Md. 106, 127, 707 A.2d 91 (1998); *Gunning v. State,* 347 Md. 332, 351, 701 A.2d 374 (1997); *Maus v. State,* 311 Md. 85, 108, 532 A.2d 1066 (1987); *Colter v. State,* 297 Md. 423, 426, 466 A.2d 1286 (1983). This principle is premised on a statute, rule, or case law according discretion to the trial court in making its decision. For example, in *Beverly,* the Court of Appeals held that the prosecutor's withdrawal of a subsequent offender notice, thereby removing any mandatory penalties, was a permissible condition under a plea agreement, and thus under Rule 4–243, the trial court "had the discretion to sentence in accord with the plea agreement." 349 Md. at 127–28, 707 A.2d 91. In *Maus,* the Court looked to case law precedent for the proposition that, in deciding the appropriate disposition for a probationer who had violated one or more conditions of probation, a trial court had the discretion to consider "whether the violator ha[d] in fact spent substantial time under circumstances that in many respects are similar to incarceration." 311 Md. at 107–08, 532 A.2d 1066.

In *Colter,* the trial court adhered to a uniform policy of excluding evidence where there had been a violation of the criminal discovery rule. 297 Md. at 428, 466 A.2d 1286. The Court of Appeals, however, observed that Rule 741 (now Rule 4–263) "provides the trial judge with authority to fashion a sanction other than exclusion, depending on the facts and

circumstances of each particular case." *Id.* The Court concluded that "it is clear that the trial judge did not exercise *the discretion granted him under the rule.*" *Id.* at 431, 466 A.2d 1286 (emphasis added). There is, however, nothing in these cases to suggest that anything more is required of the trial court than to exercise the discretion granted by the statute, rule, or case law in making its decision.

In sum, because Rule 4–243 provides that a judge accept or reject a binding plea agreement, after considering the terms of such agreement and because Judge Beckstead satisfied that requirement when she, in the exercise of her discretion, considered appellant's plea agreement and rejected it, we conclude that, when appellant's case was transferred to Judge Davis, the discretion provided by Rule 4–243(c)(1) had already been exercised. Accordingly, that discretion was not abused by Judge Davis in refusing to consider whether to accept or reject appellant's binding plea agreement.

## II.

### THE VERDICT SHEET

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895). "To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process." *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). "[C]ourts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.* Although "[t]he actual impact of a particular practice on the judgment of jurors cannot always be fully determined," the Supreme Court "has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny." *Id.* at 504, 96 S.Ct. 1691.

In the instant case, appellant argues that the trial court violated the presumption of appellant's innocence when it utilized a verdict sheet that listed the first option under each charge as "guilty." Appellant argues that, "[i]f a verdict sheet lists 'guilty' as the jury's first option, it suggests, contrary to the entrenched presumption of innocence, that 'guilty' is the first option that the jury should consider."[5] Relying on *Ruffin v. State,* 394 Md. 355, 906 A.2d 360 (2006), appellant urges that "uniformity in verdict sheets would . . . better protect the presumption of innocence" than varied and non-uniform verdict sheets that present the option of "guilty" before "not guilty." Appellant notes that "it is an open . . . question in Maryland as to whether verdict sheets must list 'not guilty' as the first option." Thus appellant asks this Court to "require[ ] [trial courts] to list 'not guilty' as the first option on every verdict sheet, in order to adequately protect the presumption of innocence."

The State responds that the verdict sheet did not violate the presumption of innocence afforded to appellant merely because it listed "guilty" as the first option. According to the State, "the verdict form is simply the mechanism through which the jury records its verdict." Thus, because "the jury was instructed that the defendant was presumed innocent and

---

5. The verdict sheet was as follows:

*VERDICT SHEET*

1. Second Degree Sex Offense: [Patient A]
Guilty _____ Not Guilty _____
2. Fourth Degree Sex Offense: [Patient A]
Guilty _____ Not Guilty _____
3. Second Degree Assault: [Patient A]
Guilty _____ Not Guilty _____
4. Fourth Degree Sex Offense: [Patient B]
Guilty _____ Not Guilty _____
5. Second Degree Assault: [Patient B]
Guilty _____ Not Guilty _____
THE FOREGOING IS OUR VERDICT.

_____
FOREPERSON

_____
DATE

that it must find the defendant guilty beyond a reasonable doubt, [appellant] has failed to demonstrate that the order of the verdict form deprived him of the benefit of the presumption of innocence."

In *Ruffin*, the Court of Appeals addressed "whether [a] trial court's jury instruction on the presumption of innocence and proof beyond a reasonable doubt was erroneous because it deviated from the Maryland Criminal Pattern Jury Instruction (MPJI–CR) 2:02." 394 Md. at 356, 906 A.2d 360. The Court first reiterated that, in Maryland, "[t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights guarantee that a criminal defendant shall only be convicted upon proof beyond a reasonable doubt." *Id.* at 363, 906 A.2d 360. The Court noted that "[t]he reasonable doubt standard of proof is an essential component in every criminal proceeding," and, therefore, "it is mandatory for the trial judge to give an instruction to the jury explaining reasonable doubt." *Id.* "The reasonable doubt standard is such an indispensable and necessary part of any criminal proceeding that, with respect to a case tried before a jury, the trial court's failure to inform the jury of that standard constitutes reversible error." *Id.* at 364, 906 A.2d 360.

The Court observed that in two previous cases it had endorsed the instruction on the reasonable doubt standard of proof and presumption of innocence adopted in the Maryland Pattern Jury Instructions. *Id.* at 365, 906 A.2d 360 (referring to *Wills v. State*, 329 Md. 370, 620 A.2d 295 (1993); *Merzbacher v. State*, 346 Md. 391, 697 A.2d 432 (1997)). Moreover,

> [m]any judges, attorneys and legal scholars in Maryland, as well as in other jurisdictions, have endorsed the use of an approved pattern jury instruction on reasonable doubt and the presumption of innocence tò ensure that a criminal defendant's due process rights are protected and to create uniformity in criminal jury trials.

*Id.* at 366, 906 A.2d 360.

Ultimately, the Court held "that [a] trial court must closely adhere to the approved pattern instruction on the presumption of innocence and reasonable doubt, MPJI–CR 2:02," and any substantial deviation constitutes reversible error. *Id.* at 357, 373, 906 A.2d 360. This was so because

[e]very defendant in every criminal jury trial is entitled to the same presumption of innocence and reasonable doubt standard of proof. Uniformity in defining those terms for the jury, by giving the pattern jury instruction, ensures that all defendants will equally receive an appropriate definition of the presumption of innocence and reasonable doubt standard of proof.

*Id.* at 372–73, 906 A.2d 360.

*Ruffin,* however, did not discuss the format of the verdict sheet in the context of the presumption of innocence, and as appellant correctly notes, there is no authority in Maryland directly addressing whether a verdict sheet must present the option of "not guilty" first. We therefore turn to our sister states for guidance.

In *State v. Watson,* 169 N.C.App. 331, 610 S.E.2d 472, 476 (2005), the defendant was convicted of violating North Carolina's felony stalking statute. The defendant complained that "the trial court erred in denying her request that the verdict sheet list the possible verdict of 'not guilty' first." *Id.* at 478. The Court of Appeals of North Carolina noted that "[t]here is no rule in North Carolina indicating the order choices must be listed on verdict sheets. Nor does Defendant cite any authority supporting this proposition." *Id.* The Court reasoned that "the verdict sheet listed 'not guilty' as a choice" but "there is no reasonable possibility that the jury would have come to a different conclusion had the choice of 'not guilty' been listed first." *Id.*

The Court found support for this conclusion in the jury instructions. The Court stated:

[T]he verdict sheet wording [did not] improperly shift the presumption of innocence. In charging the jury, the trial court stated "[u]nder our system of justice, when a defendant pleads not guilty, she is not required to prove her

innocence but is presumed to be innocent." "We presume 'that jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" Accordingly, **the trial court properly charged the jury that Defendant was presumed to be innocent, regardless of the order of possible choices on the verdict sheet.**

*Id.* (emphasis added) (citations omitted).

In *State v. Piper*, 663 N.W.2d 894, 900 (Iowa 2003), the defendant was convicted of first degree murder. The defendant claimed that the trial court erred in denying "the defendant's request to place the 'not guilty' option before the 'guilty' alternative in the verdict form." *Id.* at 915.

The Supreme Court of Iowa began its analysis by observing that, "[a]s the particular form of an instruction is left to the discretion of the trial court, [the Court] review[s] the [trial] court's ruling on the defendant's request for an abuse of discretion." *Id.* (citation omitted). The Court then turned to the jury instructions and the expected conduct of the jury:

The jury was instructed that the defendant was presumed innocent and that it must find the defendant guilty beyond a reasonable doubt. Jurors are presumed to follow the court's instructions. *See State v. Proctor*, 585 N.W.2d 841, 845 (Iowa 1998). **We do not think the order of the verdict form deprived the defendant of the benefit of the presumption of innocence.**

In addition, we reject any implication that the order of the jury's choices would work to the defendant's disadvantage. **We do not think the jury would simply sign the first option appearing on the verdict form without considering the evidence presented at trial or the instructions given by the court.** We conclude the court did not abuse its discretion in determining the format of the verdict forms.

*Id.* (emphasis added).

We have found no case, nor has appellant cited any, adopting appellant's position that the "not guilty" opinion must be

listed before the "guilty" option on a verdict sheet. Appellant directs our attention to *People v. Ferrante,* 12 Misc.3d 777, 815 N.Y.S.2d 435 (N.Y.Dist.Ct.2006), which is a New York trial court opinion. That case, however, is inapposite. We shall explain.

In *Ferrante,* the defendant was charged with driving while intoxicated and other vehicle and traffic law infractions. *Id.* at 436. Defense counsel requested that the verdict sheet present "not guilty" before "guilty" for each charge. *Id.* The request was granted by the court. *Id.* The prosecution then requested that the order be reversed so that "guilty" appear before "not guilty." *Id.* "The prosecution argued that the word 'guilty' ought to be listed on the verdict sheet first so as to allow the jury to determine if the prosecution had met its burden of [proving] guilt beyond a reasonable doubt, and, if not, to allow the jury to move on to 'not guilty.'" *Id.*

In denying the prosecutor's motion, the court noted that by statute, that the "form of the verdict must be in accordance with the court's instructions...." *Id.* at 437. It then concluded:

> In the case at bar, complete jury instructions were read to the jury on each count detailing that the People had the burden of proving the defendant guilty beyond a reasonable doubt. The verdict sheets contained both verdicts "guilty" and "not guilty" and the verdict sheets did not list any permutations thereof. Furthermore, the Court instructed the jury on its possible verdicts. The verdicts on the verdict sheets, coupled with coherent and complete jury instructions, do[ ] not produce prejudicial error.... **It is within the Court's discretion, to list the order of the verdicts on the verdict sheet** ....

*Id.* (emphasis added).

Thus, in *Ferrante,* the trial court did not hold that placing "not guilty" before "guilty" was required by any law or rule. *Id.* Instead, the court held that the order of the verdicts was within its discretion. *Id.*

Appellant does not cite, and we cannot find, any rule of procedure concerning the form of verdict sheets. Appellant does direct our attention to the Maryland Pattern Jury Instructions, Criminal ("MPJI–Cr") 7:03, which presents a sample verdict sheet for "Lesser Included Offenses." MPJI–Cr 7:03 reads:

A

Count # 1:  Greater offense

| _____ | _____ |
| not guilty | guilty |

If you find the defendant guilty on count # 1, do not go to count # 2. If you find the defendant not guilty on count # 1, go on to consider count # 2.

Count # 2:  Lesser offense

| _____ | _____ |
| not guilty | guilty |

B

Count # 1:  Greater offense

| _____ | _____ |
| not guilty | guilty |

Count # 2:  Lesser offense

| _____ | _____ |
| not guilty | guilty |

The "Notes on Use" accompanying MPJI–Cr 7:03 state:

Use version "A" if requesting a verdict on the lesser included offense only upon a not guilty verdict on the greater offense. Use version "B" if requesting a verdict on the lesser included offense regardless of the verdict on the greater offense.

Nowhere in the "Notes on Use" or elsewhere is there any mention of the placement of the "not guilty" option before the "guilty" option, nor is there any reference to any legal basis or rationale for the order of these options. Moreover, the subject matter of MPJI–Cr 7:03 is not a sample verdict sheet for all criminal jury trials, just those dealing with lesser included offenses. Because "[d]eparture from the pattern instructions

does not by itself constitute error," *Goldsberry v. State,* 182 Md.App. 394, 423, 957 A.2d 1110, *cert. granted,* 406 Md. 744, 962 A.2d 371 (2008), and given the lack of explanation for the order of the verdict options in MPJI–Cr 7:03, we conclude that MPJI–Cr 7:03 does not compel the results advocated by appellant. At most, MPJI–Cr 7:03 recommends that a trial court place the option of "not guilty" first on the verdict sheet.

Consistent with *Watson* and *Piper,* we shall consider the verdict sheet in the case *sub judice* not in isolation, but in light of the instructions given to the jury. *See Watson,* 610 S.E.2d at 478; *Piper,* 663 N.W.2d at 915. In so doing, "[w]e assume that the jury, having been made aware of the respective rights and duties of the judge and the jury in determining matters of law and of fact, would have followed the instructions of the trial judge." *Alimchandani v. Goings,* 39 Md.App. 353, 363, 386 A.2d 789 (1978).

An instruction explaining the presumption of innocence and proof beyond a reasonable doubt in a form closely mirroring MJPI–Cr 2:02 must be given to a jury sitting in a criminal case. *Ruffin,* 394 Md. at 357, 906 A.2d 360. That instruction is an essential guide to the jury. We agree with appellant that "both jury instructions and verdict sheets serve the same purpose of guiding the jury as to how the law applies to the decision-making process." But, we disagree with the concept implicit in appellant's argument that the verdict sheet and the instructions in a case carry equal weight in guiding the jury. The verdict sheet provides a much more limited guide for the jury, while the instructions are the foremost guide for the jury. A verdict sheet does not typically recount the elements of the crimes charged, the burden of proof on the State, the role of the jury in weighing the evidence, or the myriad other topics addressed in the instructions. A verdict sheet guides a jury in navigating the charges that are before it, reminds the jury of the findings that must be made, and provides a mechanism for recording the jury's determination on each charge.

In our view, stating the option of "guilty" before "not guilty" does not "dilut[e] ... the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle,* 425 U.S. at 503, 96 S.Ct. 1691. We believe the Court in *Watson* was correct in concluding that "there is no reasonable possibility that [a] jury would ... come to a different conclusion [if] the choice of 'not guilty' [is] listed first." *Watson,* 610 S.E.2d at 478. Therefore, we disagree with appellant's assertion that "a verdict sheet [that] lists 'guilty' as the jury's first option, ... suggests, contrary to the entrenched presumption of innocence, that 'guilty' is the first option that the jury should consider." The order of the jury's options on a verdict sheet, where the jury has been properly instructed, does not threaten to have "deleterious effects on fundamental rights." *Estelle,* 425 U.S. at 504, 96 S.Ct. 1691.

In the instant case, the jury was properly instructed by the trial judge on the presumption of innocence and the State's burden of proof beyond a reasonable doubt. Appellant makes no complaint about the jury instructions, and we see no error. The verdict sheet sets forth each charge against appellant and gives the jury the option to choose either "guilty" or "not guilty." We see no error or abuse of discretion in using such verdict sheet.

Nevertheless, because MPJI–Cr 7:03 in effect recommends that the trial court list "not guilty" as the first alternative on a verdict sheet, we suggest that trial courts follow that recommendation. We hold, however, that, as long as the choices "not guilty" and "guilty" are clearly given, it is not reversible error for the trial court to put "guilty" first on the verdict sheet.

**JUDGMENTS OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**