# IN THE COURT OF APPEALS OF IOWA

No. 16-0999
Filed April 18, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**DANIELLE ABANG-NTUEN,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

Danielle Abang-Ntuen appeals her conviction of willful injury. **AFFIRMED.**

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Danielle Abang-Ntuen appeals her conviction of willful injury following a joint jury trial of her and her two codefendants. She claims the district court abused its discretion in denying her repeated motions for a mistrial based on the behavior of a codefendant during the trial.

## I.    Background Facts and Proceedings

On July 14, 2015, Danielle Abang-Ntuen, her sister, Beatrice Abang-Ntuen, and their mother, Wonetah Einfeldt,[1] went to the home of Mulika Vinson to resolve a dispute between Danielle and Mulika. A physical altercation eventually ensued between Danielle, Beatrice, and Wonetah against Mulika, but the parties dispute the order of events and who initiated the exchange. Mulika was ultimately injured as a result of the altercation.

On August 5, Danielle, Beatrice, and Wonetah were all charged by trial information with willful injury, a class "D" felony, in violation of Iowa Code sections 703.1, 703.2, and 708.4(2) (2015). On October 21, the State filed a motion to consolidate the trials as the three were charged as codefendants and the charges were based on the same incident. In response, Danielle filed a motion to sever and a resistance to the motion to consolidate, arguing she would suffer prejudice if tried with Beatrice and Wonetah. Danielle contended Wonetah's pretrial statements and admissions implicated her and would thus violate *Bruton*.[2]

---

[1] Danielle and her sister share the same surname and were referred to by their first names in both parties' briefs. For clarity and consistency, we will refer to each codefendant by her first name.

[2] *See generally Bruton v. United States*, 391 U.S. 123 (1968) (concluding right of confrontation was violated when defendant was convicted after a joint trial in which a codefendant's confession was introduced in evidence but the codefendant was not subject to cross-examination).

Additionally, she argued Wonetah's admissions during interrogation could prejudice Danielle and violate her right to a fair trial as the jury could infer that Danielle had the same or a similar intent as Wonetah. Danielle further argued that, if Wonetah declined to testify, her right of confrontation, right to cross-examine witnesses, and right to due process would be violated.

On January 28, 2016, following a hearing, the court granted the State's motion to consolidate and denied Danielle's motion to sever, ruling that Wonetah's pretrial statements and admissions concerned only her and her intent and did not, expressly or by implication, identify or opine on Danielle or Beatrice or their intent, thus distinguishing this case from *Bruton*.[3] Danielle's counsel renewed the motion to sever twice, before and during the trial. The district court denied both motions, ruling that severance was not warranted because the state of the case remained the same.

The three were tried together and Wonetah was disruptive during the proceedings. Danielle's counsel joined in several motions for a mistrial based upon this behavior, arguing that Wonetah's behavior prejudiced her and infringed upon her right to a fair trial. The court denied each of these motions. The jury found Danielle and Wonetah guilty of willful injury, as charged, while Beatrice was found guilty of the lesser-included offense of simple assault.

---

[3] The court further denied Danielle's motion to enlarge, addressing Danielle's confrontation issues, ruling that Wonetah's statements did not inculpate either Danielle or Beatrice. It further held that if the State relied on an aiding-and-abetting theory of liability, Wonetah's intent could be material with respect to the other two's charges, whether tried separately or together. However the State had not clarified its theory of liability at that point. The court identified that the risk of Wonetah refusing to testify exists whether the three were tried together or separately. The State later amended the trial information to remove any language referring to aiding and abetting or joint criminal conduct.

As noted, Danielle appeals.

## II.    Scope and Standards of Review

This court reviews motions for mistrial for an abuse of discretion. *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006).  A mistrial is appropriate when an impartial verdict cannot be reached or the verdict would have to be reversed on appeal due to an obvious procedural error in the trial.  *Id.*  "[A] court is found to have abused its discretion only when defendant shows prejudice which prevents him from having a fair trial."  *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989). We will intervene only where the discretion has been clearly abused.  *Newell*, 710 N.W.2d at 32.

## III.    Analysis

Because counsel made several motions for mistrial, we will discuss each individually to determine if the court abused its discretion by denying each one.[4]

### A.    First Motion for Mistrial

Danielle raised the first motion for mistrial on the second day of trial.  At this time, jury selection had already been conducted and the parties were giving their opening statements.  During the State's opening statement, Wonetah said, "Lie." After this comment, the court warned her that "[i]f I hear another word, we're going

---

[4] We address the claims of abuse of discretion on the motions for mistrial as the issues on appeal.  Counsel's references during oral arguments to the motions for severance, the weight of the evidence, and motion for new trial were raised in Danielle's appellate brief; but the focus of the brief was on why the motions for mistrial should have been granted. No other issues were articulated beyond references in the facts section and in the scope of review section.  Additionally, we find that Danielle waived any claim regarding the motions for severance in her brief, as she did not cite authority or claim the court abused its discretion in denying the motions.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").  Further, she agreed with the court's ruling and reasoning.  Therefore, we do not address these issues.

to take a recess. Okay?" The State then resumed its opening statement. At a later point in the State's opening, the following exchange occurred:

> [PROSECUTOR]: They did tell the officers that Ms. Vinson threw the first punch. They also told the officers that Ms. Vinson brandished a gun before the fight began. Defendant Wonetah Einfeldt told the officers, I'm telling you right now, I beat her ass.
> MS. EINFELDT: Sure did.
> [PROSECUTOR]: Jeremy Cooper is going to tell you Ms. Vinson did nothing to initiate that fight. Nicholas Hardcastle is going to tell you Ms. Vinson did nothing to initiate that fight. Jeremy Cooper is going to tell you he saw no gun. He heard nothing about a gun brandished by Ms. Vinson or anyone else. Nicholas Hardcastle is going to tell you there was no gun that he saw. He never heard anybody mention a gun.
> Defendant Wonetah Einfeldt, she did have some injuries. She had a scrape to her palm, and a scrape to her knee. The officers called EMTs to the police station to tend to her. They cleaned her knee and put a Band-Aid on it.
> MS. EINFELDT: No, they didn't.

After this remark, the court took a recess and asked that the jury return to the jury room. The court admonished Wonetah for her remarks. The admonishment consisted of the following exchange:

> THE COURT: You may be seated. Okay. Ms. Einfeldt, I heard three exclamations from you during the state's opening statement. I warned you once that we would be taking a recess if I heard anything else, and you didn't stop. Now, ma'am, I'm going to ask you, are you able to control yourself during the rest of this trial? When an attorney is standing before the jury and making a statement, when an attorney is asking a witness questions, when a witness is answering those questions, you must be quiet. Can you do that, ma'am?
> MS. EINFELDT: Your Honor, I'm confused right here because I don't understand. I didn't understand how the Court can knowingly just lie. She knows she was 17 when she committed the crime. It's a blatant lie.
> THE COURT: Ma'am, your attorney, you are represented by competent counsel.
> MS. EINFELDT: He's not doing anything.
> THE COURT: Ma'am, there's nothing—
> MS. EINFELDT: Forget it.
> THE COURT: Are you telling me you can't control yourself?

MS. EINFELDT: I don't know why I have to be here.

THE COURT: You have to be here because you are accused of a serious crime. While you're here, you will abide by the rules. Can you abide by the rules?

MS. EINFELDT: Yeah. And she keeps calling me a savage. She's a savage. She's a liar.

THE COURT: Ma'am, I'm going to ask you if you can be quiet during the rest of this trial. The only time you speak on the record is when you're on that witness stand, if you elect to take the stand. You don't have to. [Wonetah's counsel] can talk to you about that, but otherwise you be quiet.

MS. EINFELDT: Yes, sir.

THE COURT: And, ma'am, I'm not joking.

MS. EINFELDT: I'm not joking either.

THE COURT: I will tell when you can speak. Do you understand that? You will speak when I tell you you can speak.

MS. EINFELDT: Yes, sir.

THE COURT: Now, if you don't, what I'm going to do is I'm going to ask you if you want to remain in this courtroom. If you remain in this courtroom, I'm going to have you bound and gagged. If you don't want to remain in the courtroom, and your attorney agrees, I will excuse you from this courtroom. I may find you in contempt and order you to serve jail time for the contempt. Ma'am, this is serious.

MS. EINFELDT: It is.

THE COURT: And what I'm telling you is serious. Now, can you control yourself during the rest of this trial? Do you promise me that?

MS. EINFELDT: Yes, sir.

THE COURT: I will do everything I can to make sure you get a fair trial. [Wonetah's counsel] will do everything he can to make sure that you get a fair trial. But you are prejudicing your own right to a fair trial by these exclamations. If you think that jury is more likely to find you not guilty because of what you're saying while [the prosecutor] is speaking, you are mistaken, and you are seriously mistaken, and you're mistaken to the point where it may put you in prison. Do you understand all of that?

MS. EINFELDT: Yes, sir.

THE COURT: Okay. Now, do you need a little bit of time to collect yourself?

MS. EINFELDT: Yes.

THE COURT: Okay. We're going to take a brief recess.

[BEATRICE'S COUNSEL]: Your Honor, I think [Danielle's counsel] and I have some record we need to make before that happens. I think I need to move at this time for a mistrial because Ms. Einfeldt's outburst will affect not only her, but her daughters, and I believe her outbursts may have affected Beatrice's case, that if

they're judged together by Ms. Einfeldt's bad behavior, that Beatrice is less likely to get a fair trial.

THE COURT: I will assume that [Danielle's counsel] is joining in that. I'm not going to declare a mistrial. I believe that what has happened up to this point has been relatively minor. She did make some exclamations. It was not overly prejudicial. I also think that this jury is going to be able to distinguish. They know who made these statements, I'll put it that way. So I'm going to deny the motion for a mistrial at this point. But here's what's going to happen. If I have to declare a mistrial, I'm going to decide which of these defendants is going to finish this trial. Then we'll reschedule the others. Okay?

[BEATRICE'S COUNSEL]: Yes, Your Honor.

[DANIELLE'S COUNSEL]: Your Honor, I would like to make sure the record is clear. I formally also am requesting a mistrial. I believe that my client's rights to a fair trial in the United States and Iowa Constitutions have been violated.

THE COURT: I understand.

[DANIELLE'S COUNSEL]: I understand your ruling, but I would like to state that for the record.

THE COURT: Okay. I understand that you joined in the motion, and I well understand the basis of the motion. And if this behavior continues, believe me, we will back and revisit that. But at this point I don't believe the harm is irreparably done. Okay? Okay.

On appellate review, the district court enjoys wide discretion in denying a motion for mistrial because "it is in the best position to appraise the effect of any alleged misconduct." *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). Iowa Rule of Criminal Procedure 2.27(4)(a) identifies several steps the court may employ to ensure the decorum of the court:

(1) Cite the defendant for contempt.
(2) Take the defendant out of the courtroom until the defendant promises to behave properly.
(3) Bind and gag the defendant, thereby keeping the defendant present.

Whether to employ the alternatives of this rule is a judgment call depending on the circumstance of each case. *State v. Webb*, 516 N.W.2d 824, 830 (Iowa 1994).

This rule gives trial courts discretion on whether and to what extent to use any of the alternatives. *State v. Edwards*, 507 N.W.2d 393, 399 (Iowa, 1993).

Upon a review of the transcript leading up to the time of the first motion for mistrial, we find only a few remarks were made by Wonetah in front of the jury and a warning was given by the court. Additionally, a recess was taken and the jury was removed from the courtroom while the court admonished Wonetah. We do not find the court's assessment of outbursts up to this point as minor to be unreasonable given the limited disruptions, and thus we do not find the court abused its exercise of discretion in denying the motion for a mistrial.

B.    Second Motion for Mistrial

After the testimony of a police officer, Danielle's counsel renewed her previous motion for mistrial in conjunction with Beatrice's counsel. Beatrice's attorney identified that Wonetah had her head down for much of the testimony, had her eyes closed, and had loudly pulled tissues from a box and then stuffed them back in the box. Danielle's attorney explained that she had not seen all of this behavior because of her line of sight but had observed some. The court again denied the motion and remarked:

> Here's my sense of it, though, and that is that by this point in the trial, the jury well understands that three separate defendants are being tried. There's been substantial evidence about what each individual defendant's participation or non participation in this altercation was. If Ms. Einfeldt's behavior prejudices anyone, I believe it prejudices her. I don't believe it unfairly prejudices either of the other two defendants. So your summary of the facts I accept. I believe it's accurate. But I'm denying the motion for mistrial.

A review of the transcript for the time preceding the second motion for mistrial shows that after the first motion was denied, the trial proceeded and the

State and defense counsel both gave their opening statements without interruption. The victim testified and, during cross-examination by Beatrice's counsel, Wonetah sighed, which the court reporter noted. Neither counsel nor the court remarked on this. During the next witness's testimony, Wonetah objected. The witness had personally observed the altercation and testified on cross-examination by Danielle's attorney that it was "pretty obvious that the defendants initiated the fight and that, you know, that's what they were there to do. But—." At this point Wonetah said "objection." The court responded by asking who made the objection but made no further inquiry or comment about Wonetah's remark. Neither did any of the defense attorneys. No other interruptions are noted for the remainder of the day.

At the beginning of the next day of trial and before the jury reentered the courtroom, the court noted:

> [W]e did have a rough patch during the state's opening. That was on Monday. There were a couple of disruptions. They were not—in my view, they were distracting. They were not loud to the point of, in my view, irreparably poisoning the jury pool.
> Yesterday, quite honestly, I think we pretty much got through the day uneventfully, at least from . . . my perspective, except when Ms. Einfeldt objected to a question. That, again, I did not consider that to be so disruptive or so prejudicial that this jury cannot consider the evidence in this case.

After further discussion of other matters, the court again reminded Wonetah that there should be no interruptions. There were no noted disruptions during the testimony of the first witness called to the stand that day, but during the second witness's testimony, an officer who responded to the scene, Wonetah again made an outburst, saying "[l]iar" after the officer testified that the victim's injuries were on the high end of what he saw in assault cases. The court responded to this by

saying "ma'am." No further response was made by the court or from any of the attorneys. No further disruption occurred during this witness's testimony.

During the testimony of the third witness of that day, another officer who responded to the scene, Wonetah remarked "I never said that" in response to testimony about Wonetah's statements to police during the day in question. No response was made by the court or by any of the attorneys. On cross-examination by Danielle's attorney, the witness identified that when looking at a picture of Danielle from that day, she saw a mosquito bite in response to questioning about whether they observed any injuries on Danielle's face. After the witness answered, Wonetah said "[h]a ha ha" and slammed her hand on counsel table twice. The court responded by shushing her. Once cross-examination of the witness concluded, the court released the jury for lunch.

The verbal outbursts were isolated in nature and Wonetah stopped each time after the court admonished her. We find the trial court did not draw attention to every outburst Wonetah made and the court's reasoning for denying the motion that Wonetah's behavior prejudices herself only is reasonable given that most of the remarks she made were in reference to testimony about herself and her actions. Regarding her physical actions of putting her head down, having her eyes closed, and manipulating tissues in and out of its box, we find that "[t]he trial court was in a better position to observe the matter complained of and its effect on the jury." *Callender*, 444 N.W.2d at 770. Based on the record before us, we find the trial court's denial of the first renewal of the motion for mistrial did not constitute an abuse of discretion.

C.     Third motion for mistrial

Danielle's counsel made a final motion for mistrial, in conjunction with Beatrice's counsel, after closing arguments were completed and the jury began its deliberations. The court again denied the motions for mistrial.

A review of the transcript reveals that during the testimony of another witness to the altercation, Wonetah made the comment "[s]ide by side" after Danielle's attorney asked the witness to review his deposition testimony. No response was made by the court or by any of the attorneys. Wonetah then made the comment "[n]o relation" when Beatrice's attorney began his cross-examination, as both the witness and the attorney shared the same surname. There was no response by the court or the other attorneys. We find both of these comments to be insignificant and conclude no response was required by the court. We note that Wonetah made a more involved outburst during the testimony of a witness called for an offer of proof, however this was made outside the presence of the jury.

The transcript also reveals that, outside the presence of the jury, Wonetah stated she wanted to testify and was questioned on the record by her counsel regarding this decision. The court then admonished her that if and when she testified, she would need to restrain her answers only to the questions asked by counsel and that if she tried to testify to issues the court already decided were inadmissible, she would possibly face contempt charges. The court asked her if she could promise to only answer the questions asked, to which she affirmatively responded.

Further, during Danielle's testimony and in front of the jury, Wonetah said "[y]eah" after Danielle testified "[n]o, I think the video shows, excuse me, you bitches want to jump me?" The Court did not respond to this remark and there is

no further disruption noted during the remainder of Danielle's testimony or Beatrice's testimony. Additionally, during closing arguments by Wonetah's counsel, she corrected him on which daughter made a statement before the altercation and then clapped when her counsel finished. We again find that these interruptions are minor.

> During the State's rebuttal, Wonetah did interrupt several times:
>
> [PROSECUTOR]: Here's the apartment building where the defendants live, and here's Perkins Park over here. Let's see the most direct route.
> > MS. EINFELDT: Right behind our house.
> > THE COURT: Ma'am.
> > MS. RITCHIE: To get to Perkins Park.
> > MS. EINFELDT: Um-hum.
> > . . . .
> > [PROSECUTOR]: . . . .
> > The recording shows you the exact extent of Danielle and Wonetah's anger and hatred for Nikki Vinson, and none of it looks like fear. Danielle testified in court that she doesn't get angry, and I asked her if Ms. Vinson was screaming and pleading for help. She said, no, she was saying bitch. Remember that? Well, let's take a listen.
> > > MS. EINFELDT: Let's listen.
> > (Video played.)
> > . . . .
> > [PROSECUTOR]: . . . .
> > Ms. Vinson told you she does not have a gun. Now they want to make a large deal out of her shooting a firearm—
> > > MS. EINFELDT: Yeah, we do.
> > > THE COURT: Ma'am, one more time, and you're going to be out of the courtroom.

The transcript notes that Wonetah then left the courtroom voluntarily. After the court released the jury to begin deliberations, the court made a record about Wonetah's departure. The defense attorneys renewed their motions for mistrial, which were collectively denied.

As noted above, most of the disruptions by Wonetah were brief, one- or two-word remarks. When she interrupted closing arguments, the court warned her that if she continued she would be removed from the courtroom as allowed under Iowa Rule of Criminal Procedure 2.27(4). Given that Wonetah voluntarily left, the court did not need to take the step of removing her.

A mistrial is a drastic measure and a review of the record reveals that the trial court utilized different tactics throughout the trial to manage Wonetah's behavior in order to permit the trial to be completed, including ignoring minor disruptions, admonishing her and, finally, warning her that if she continued, she would be removed from the courtroom.

The jury instructions also indicate that the jury was to judge each defendant individually based solely upon each defendant's individual participation in the crime, what could and could not be considered evidence, and that any statement made by Wonetah regarding her specific intent was not relevant to prove the specific intent of Beatrice or Danielle. A jury is presumed to follow the instructions of the court. *State v. Proctor*, 585 N.W.2d 841, 845 (Iowa 1998). There is no evidence indicating the jury did not follow the court's instructions in this case. Beatrice being found guilty of a lesser-included offense confirms the presumption that the jury followed instructions and individually judged each defendant.

As noted, the trial court was in a better position to observe the matters complained of and any effect it might have had on the jury. Throughout the entire trial, most of the disruptions were minor, and many of the protracted outbursts by Wonetah, including those Danielle identified in her brief, were not in the presence

of the jury. Based on the record, we find the court's repeated denials of the motions for mistrial did not constitute an abuse of discretion.

**AFFIRMED.**