**STATE of Iowa, Appellee,**

v.

**Dwight Charles REED, Appellant.**

**No. 90–760.**

Supreme Court of Iowa.

March 18, 1992.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and D. Raymond Walton, Asst. County Atty., for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN and SNELL, JJ.

NEUMAN, Justice.

We granted the State's petition for further review after the court of appeals reversed defendant Dwight Reed's conviction for possession of cocaine with intent to deliver. The question is whether a comment made by the district court during jury voir dire so damaged the credibility of Reed's key witness that he was denied a fair trial. Having examined the court's statement in the context of the entire record, we are convinced that the court's error was harmless. Thus we vacate the court of appeals' decision and affirm the judgment of the district court.

Dwight Reed's involvement in this case began when he fled from officers who were investigating the armed robbery of a Waterloo grocery store. As it turned out, the officers were mistaken about Reed's identity as the robber. But meanwhile he led them on a motor vehicle chase through a residential area of the city at speeds twice the posted limits. The chase ended when Reed crashed into another car and then fled a short distance on foot. When the police finally stopped him at gunpoint, Reed was found in possession of ten individually wrapped packets of rock cocaine ("crack"). He was charged with possession of cocaine with intent to deliver. *See* Iowa Code § 204.401(1)(a) (1987).

Reed's defense rested on his claim that his aunt's former husband, Waterloo police officer Eddie Denton, had sought his help in "getting close to" a suspected drug dealer known as "Stickman." Just prior to the chase, Stickman had allegedly "fronted" Reed $200 worth of crack on Reed's promise that he would pay him $140 when the sales were completed. Reed maintained that he was on his way to surrender the crack to Officer Denton when he became

entangled in the robbery investigation and was found with the drugs on him.

This appeal centers on remarks made by the court on the first day of trial during a preliminary voir dire of the jury panel. The court introduced counsel and the defendant and then proceeded to name the persons scheduled to be called as witnesses. During this introduction the court told the jury that one of the witnesses, police officer Eddie Denton, was himself the subject of pending criminal charges. The court then inquired whether information or impressions the jurors had about that investigation would make it difficult for them to be fair in the present case.

At this point defense counsel asked to make a record concerning the court's remarks. Outside the presence of the jury, counsel expressed his concern that the court's statement about Officer Denton had placed before the jury information about this witness that would not otherwise be admissible and that cast doubt on his reliability. Acknowledging that the court's apparent purpose was merely to air any possible juror prejudice, counsel claimed the court's remarks would "taint or poison" Officer Denton's testimony. Thus counsel asked the court to disqualify the entire panel and begin anew.

In its consideration of the motion, the court observed that for four or five months there had been widespread media coverage of the criminal investigation of Officer Denton and others. He expressed his opinion that "there is no way that one could rationally believe that anyone could live in Black Hawk County and not be aware of the charges that are pending against police officers." Moreover, he noted that the specific charges against Officer Denton were not disclosed, nor had he indicated for whom Denton would testify. Thus he denied the motion.

The jury was selected and the State presented its case. In addition to describing the high-speed chase, officers testified that when Reed was arrested he was carrying nearly $1300 in cash, most of it folded in $100 bundles of $20 bills. Drug enforcement officers testified that the amount and packaging of the crack in Reed's posses-

sion, combined with this quantity of cash, was consistent with drug dealing. The State's evidence also revealed that Reed had been unemployed nearly six months when arrested and his only apparent source of legitimate income was a $333 per month stipend for aid to dependent children.

In his own defense, Reed testified that when Officer Denton asked Reed for some information about Stickman, Reed was glad to help out. He was not entirely clear about what Officer Denton wanted him to do, but he acknowledged that Denton did not tell him to buy drugs.

Reed then described his encounter with Stickman at a local bar. They were reportedly playing pool when Stickman asked Reed if he wanted to make some money. Reed conceded that Stickman knew neither Reed's name nor address, but he nevertheless fronted him $200 worth of drugs on Reed's promise to be his "mule."

Reed told the jury that after leaving the bar he planned to make two stops before contacting Denton with the evidence of Stickman's drug activity. First he picked up his son and then he planned to stop briefly at a friend's house to buy food stamps. Outside the friend's apartment Reed saw a man running down the street with a gun in his hand. Reed left his son in the car. When he returned from the apartment, he again saw the gunman and also noticed a number of police cars. Although the police pulled in front of and behind Reed's car, he thought they were after the man with the gun. So he sped off. When he realized the police were pursuing him, he got scared and tried to elude them. Upon his arrest he offered the police no explanation for the drugs he possessed. He told the jurors that he thought his work for Denton was supposed to remain confidential.

Officer Denton corroborated Reed's assertion that he sought his help in getting information about a drug dealer named Stickman. He was aware that Reed had furnished reliable information in the past. He testified that he did not authorize Reed to buy drugs from Stickman, nor had he furnished funds nor followed the custom-

ary procedures for arranging a controlled drug buy.

Finally, Reed's mother testified that on the day of her son's arrest she had given him approximately $650 in cash with directions to buy Christmas presents for her grandchildren.

■ I. Control of jury voir dire is lodged in the sound discretion of the trial court. *State v. Oshinbanjo*, 361 N.W.2d 318, 321 (Iowa App.1984); *State v. Windsor*, 316 N.W.2d 684, 686 (Iowa 1982). We will not reverse except upon proof "that discretion manifestly has been abused." *Windsor*, 316 N.W.2d at 686.

Irrespective of the court's good intentions, we are convinced its misguided elaboration on Officer Denton's criminal history was unwarranted under the circumstances. A simple statement concerning the names of potential witnesses would have drawn out the jurors' familiarity with a particular officer. Contrary to the court's assumption that *all* the jurors would be familiar with the circumstances surrounding the police department investigation, the record reveals that only one juror displayed any familiarity with it. That juror was able to identify Officer Denton by name but was not stricken from the panel. Apparently counsel were convinced that no bias flowed from his knowledge.

By commenting on Officer Denton's status as an accused person, the court unnecessarily enlightened the jurors about a piece of impeachment evidence that would be otherwise inadmissible at trial. *State v. Walton*, 311 N.W.2d 110, 112 (Iowa 1981). No good reason therefore appears. The court clearly erred.

■ II. The question is whether the court's error so prejudiced the defendant that he is entitled to a new trial. *State v. Dalgliesh*, 223 N.W.2d 627, 628 (Iowa 1974). To deny Reed a new trial we must find the court's error harmless beyond a reasonable doubt. *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980); *see State v. Larmond*, 244 N.W.2d 233, 235 (Iowa 1976) ("A fair trial in a fair tribunal is a basic requirement of constitutional due process."). For the reasons that follow we are convinced that standard is met in the present case.

First, the court's brief comments about the police department investigation—and Officer Denton's status in particular—do not appear calculated to bias the jurors against the defendant. *Cf. Larmond*, 244 N.W.2d at 236 (hostile attitude toward defense combined with partisan zeal for prosecution telegraphed judge's disapproval and disbelief of defendant's witnesses and deprived defendant of fair trial). The court's comment was factual in nature, not judgmental. He did not state whether Denton would be appearing on behalf of the State or the defendant. Nor could the court's comment be fairly characterized as advocacy on behalf of the State. *See generally United States v. Gunter*, 631 F.2d 583, 587 (8th Cir.1980) (trial judge should never assume role of advocate but may query witnesses in effort to clarify evidence so long as questions do not demonstrate intent to influence jury).

The significance of Denton's lack of identification as either a State or defense witness has further implications for Reed's claim of prejudice. On appeal Reed characterizes Denton as his "star" witness. But, in fact, the officer was identified in the trial information minutes as a State witness. Denton did corroborate Reed's claim that his help was sought in gaining information about Stickman. Denton's "star" quality stopped there, however. He testified unequivocally that he did not authorize Reed to purchase drugs from Stickman; that the scenario Reed painted was contrary to the protocol for a controlled buy; and that upon learning of Reed's arrest, he immediately called one of his superiors to disclaim any authorization for Reed's possession of drugs. In sum, Denton's testimony generated a good deal more doubt about Reed's professed innocence than proof of it. Thus, to the extent Reed's claim of prejudice rests on the importance of Denton's testimony, the argument is not persuasive.

Moreover, the court's comment about Denton must be considered in the context of the entire trial. It was not Denton's

credibility, but Reed's, that was at issue. The State tendered overwhelming evidence of Reed's possession of cocaine with intent to deliver: an unexplained flight from marked squad cars, possession of crack in conveniently packaged $20 bundles, over $1000 in carefully folded bills, no other apparent source of income, and possession of one food stamp—a common medium of exchange in small drug transactions. To this list must be added Reed's admissions that he lied in the past to secure welfare benefits and that his securing crack—rather than information—from Stickman did nothing to advance official understanding of the drug dealer's operation. By contrast, Denton's testimony offered an explanation solely for Reed's possession of ten $20 packets of cocaine—and then only if the jury believed that Reed misunderstood his mission.

We are mindful that a judge's fleeting remark may carry great—even controlling—weight with the jury. *State v. Johnson*, 243 N.W.2d 598, 602 (Iowa 1976). And prior decisions have cautioned judges that overintervention in a trial may pose greater risk of prejudice than underintervention. *State v. Matlock*, 387 N.W.2d 781, 784 (Iowa App.1986); *State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980). Yet we have no doubt that a reasonable jury could convict Reed of the crime charged, even with the knowledge that Officer Denton was under criminal indictment. His testimony was not that favorable to the defense, the matter was mentioned only once before trial and not again repeated, and the balance of the transcript reveals nothing but neutrality toward the defendant by this judge. The court's error was harmless and does not compel reversal.

■ III. Reed also claims that his trial counsel rendered ineffective assistance because he failed to request a jury instruction based on Iowa Code section 704.11. That statute provides, in pertinent part:

> A peace officer or person acting as an agent of or directed by any police agency who participates in the commission of a crime by another person solely for the purpose of gathering evidence leading to the prosecution of such other person shall not be guilty of that crime ...

provided ... [t]he officer or person is not an instigator of the criminal activity.... [and] [t]he officer or person acts with the consent of superiors, or the necessity of immediate action precludes obtaining such consent.

Iowa Code §§ 704.11(1), (3). Reed contends the statute supports his defense, the jury should have been instructed concerning it, and his counsel's failure to insist upon it prejudiced the outcome of the trial.

We entertain grave doubts about whether the facts before us even furnish a basis for the instruction Reed seeks. We customarily reserve such claims for postconviction proceedings, however, so that counsel may respond to defendant's charges with an evidentiary record. *State v. Johnson*, 445 N.W.2d 337, 339 (Iowa 1989). Accordingly, we affirm defendant's conviction in this case without prejudicing his right to pursue a postconviction action to litigate his claim of ineffective counsel.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.