STATE of Iowa, Appellee,

v.

Jerry Lee PROCTOR, Appellant.

No. 97–296.

Supreme Court of Iowa.

Sept. 23, 1998.

Linda Del Gallo, State Appellate Defender, Kevin Cmelik and John Messina, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant, Jerry Lee Proctor, was convicted of first-degree murder in connection with the abduction, rape, and murder of Patricia Howlett. On appeal from the conviction, Proctor claims the trial court erred in refusing his requested instruction on a compulsion defense. He also asserts the court abused its discretion in denying defense counsel's use of graphic photos unrelated to the case and in denying his motion for new trial based on the jurors' exposure to inadmissible "profile" evidence. Finding no error, we affirm.

## I. Background Facts and Proceedings.

Patricia Howlett was reported missing in November 1994 when she failed to return home from running errands. Several days later, a maintenance worker found Howlett's partially clothed body at a Des Moines ballpark. She had been beaten and sexually abused, her throat slashed, and her body partially burned.

A year passed before authorities learned that Jerry Proctor had divulged detailed facts about the crime to his mother and girlfriend. When contacted, Proctor volunteered to meet with police and sign a *Miranda* waiver. During the interview, Proctor stated that all he knew of the Howlett murder were tidbits from the news. As the interview progressed, however, he revealed information not reported in the media. His demeanor changed markedly when confronted with the fact that one of his confidants—his girlfriend, Sarah Wonderlin—had already given police a full statement.

Proctor then confessed the following story. On the night of Howlett's disappearance he was in a West Des Moines shopping center parking lot when he witnessed a woman being attacked by an assailant with a knife. As Proctor approached to investigate, the assailant reportedly stabbed Howlett in the leg. Proctor confronted the man, who responded by pulling a gun and forcing Proctor and the woman into the woman's car. Proctor said he was ordered to drive to a ballpark near his mother's home. He claimed the unknown man then led the two to a secluded area, beat them both to the ground, and ordered Proctor to sodomize Howlett. When the act was done, the man slit Howlett's throat. Proctor then drove the unknown man back to the shopping center, where he was able to escape. Proctor admitted that several days later he returned to the ballpark, doused Howlett with gasoline, and set her on fire. He claimed this was an attempt to destroy DNA evidence connecting him to the scene.

Despite pursuing several leads, authorities never found the "unknown man." The State charged Proctor with first-degree murder based on alternative theories of willful, deliberate, and premeditated killing, *see* Iowa Code § 707.2(1) (1995), or while participating in a forcible felony, *see id.* § 707.2(2). The matter proceeded to trial. During voir dire of the prospective jurors, Proctor's counsel displayed (without warning to the court or opposing counsel) what he candidly described as photographs of "a horrendous death" in order to give the jurors "a little taste of what they're going to see without using the actual pictures of Patricia Howlett." On the State's objection, the court prevented defense counsel from further use of the photographs.

At trial, Sarah Wonderlin testified that in mid-November, around the time of Howlett's murder, Proctor came home with blood-stained blue jeans, claiming to have been in a fight. He discarded the jeans in a grocery store dumpster. Proctor then had her drive him to a shopping center, where he looked for a lost identification card in a white four-door Ford. She recalled that later media reports of Howlett's disappearance described her white four-door Ford Escort found in the Westown Shopping Center. The description matched the location, time frame, and type of car Proctor had searched.

When the jurors retired to deliberate, it was discovered that an investigative "profile" report had been included in the evidence given to the jury even though it had been ruled inadmissible. Following a hearing in which the court examined jurors concerning the document, the court admonished the panel to disregard it and determined no prejudice to Proctor resulted from its limited review.

The jury returned a verdict finding Proctor guilty of first-degree murder. The court

denied Proctor's motion for new trial. This appeal by Proctor followed.

## II. Issues on Appeal.

■■■ **A. Compulsion defense.** Proctor's principal claim on appeal relates to the court's refusal to submit a jury instruction on his proposed defense of compulsion. Our review of Proctor's claim is for the correction of errors at law. *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996). A requested instruction must be given so long as it correctly states the law, has application to the case, and is not stated elsewhere in the instructions. *Id.*

Although Proctor did not testify at trial, his confession and other pretrial statements consistently maintained that he participated in the abduction and sexual assault of Howlett only under threat of serious and immediate injury from the "unknown man." Proctor denied responsibility for the fatal stab wound. Thus, as to the charge of felony murder only, Proctor claimed entitlement to submission of a compulsion defense. The district court rejected Proctor's argument and, we think, rightly so.

Iowa Code section 704.10 sets forth the defense of compulsion and its limits. The statute states:

> No act, *other than an act by which one intentionally or recklessly causes physical injury to another,* is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted only by the person doing such act.

Iowa Code § 704.10 (emphasis added). By limiting his assignment of error to the charge of felony murder, Proctor impliedly concedes the universal and longstanding rule that compulsion is not a defense to premeditated murder. *See Tully v. State*, 730 P.2d 1206, 1210 (Okla.Crim.App.1986) (citing *Arp v. State*, 97 Ala. 5, 12 So. 301 (1893)); *State v. Rumble*, 680 S.W.2d 939, 942 (Mo.1984); *accord State v. Hunter*, 241 Kan. 629, 740 P.2d 559, 569 (Kan.1987) (restricting limitation on compulsion defense "to crimes of intentional killing"); *see also* Alan Reed, *Duress and Prov-*

*ocation as Excuses to Murder: Salutary Lessons From Recent Anglo–American Jurisprudence*, 6 J. Transnat'l L. & Pol'y 51, 58 (1996) ("The virtually unassailable position of Anglo–American common law has been that duress never excuses murder and that the threatened individual ought to die himself rather than escape by killing another human being."); Gerald A. Williams, Note, *Criminal Law:* Tully v. State of Oklahoma: *Oklahoma Recognizes Duress as a Defense for Felony–Murder*, 41 Okla. L.Rev. 515, 519 (1988) ("duress is not a defense to an intentional homicide"). Proctor frames the question on appeal as "whether a defendant in a *felony* murder case is entitled to a compulsion instruction when the defendant claims he was compelled to commit an underlying felony which does not require injury as an element." This is a question of first impression in Iowa.

Other states addressing the issue have reached differing conclusions. The decisions largely turn on the language of the particular statutes authorizing a compulsion defense. In Arizona, for example, where the defense is expressly prohibited "for offenses involving homicide or serious physical injury," *see* Ariz. Rev.Stat. § 13–412(C), the supreme court ruled the defense unavailable as a matter of law because "[f]irst-degree murder, whether premeditated or felony murder, is a homicide." *State v. Encinas*, 132 Ariz. 493, 647 P.2d 624, 627 (Ariz.1982). Likewise in Missouri, where the defense of duress "is not available … to the crime of murder," *see* Mo.Rev.Stat. § 562.071(2), the supreme court held the defense unavailable to a defendant charged with any form of murder, including felony murder. *Rumble*, 680 S.W.2d at 942. Numerous other states expressly exclude duress as a defense to murder or any other crime punishable by death. *See Tully*, 730 P.2d at 1208 n. 2 (citing statutes).

Iowa Code section 704.10 does not so plainly carve out murder as a charge to which compulsion is not available as an affirmative defense. If it did so, felony murder would arguably come within the statute's scope because, in Iowa, "[t]here is but one crime called murder … committed in several ways." *State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977). Our statute instead refers .

to "an act by which one intentionally or recklessly causes physical injury." Iowa Code § 704.10. In *State v. LeCompte*, 327 N.W.2d 221 (Iowa 1982), we concluded that the "physical injury" limitation clearly would be met in the case of an act producing death. *LeCompte*, 327 N.W.2d at 223. The question arguably unaddressed in *LeCompte* is what "act" section 704.10 refers to in the case of felony murder.

Proctor argues that our focus should be on the predicate felonies—here, sexual abuse and kidnapping—rather than the death-provoking injury. His argument is in keeping with the rationale applied in a minority of states which hold that any limit on the defense of duress should "be confined to crimes of intentional killing and not to killings done by another during the commission of some lesser felony." *Hunter*, 740 P.2d at 568; *accord People v. Serrano*, 286 Ill.App.3d 485, 222 Ill.Dec. 47, 676 N.E.2d 1011, 1015 (Ill. App.1997); *Tully*, 730 P.2d at 1210. An often repeated quote from LaFave and Scott illustrates the rationale underlying these decisions:

> [I]f *A* compels *B* at gunpoint to drive him to the bank which *A* intends to rob, and during the ensuing robbery *A* kills a bank customer *C*, *B* is not guilty of the robbery (for he was justified by duress) and so is not guilty of felony murder of *C* in the commission of robbery. The law properly recognizes that one is justified in aiding a robbery if he is forced by threats to do so to save his life; he should not lose the defense because his threateners unexpectedly kill someone in the course of the robbery and thus convert a mere robbery into a murder.

*Hunter*, 740 P.2d at 568 (quoting Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law 374, 377 (1972)); *accord Serrano*, 222 Ill.Dec. 47, 676 N.E.2d at 1015; *Tully*, 730 P.2d at 1210.

Because Proctor claims to have taken no part in the actual killing, he insists the jury should have been instructed regarding his compulsion defense to the underlying "acts" of sexual abuse and kidnapping. Yet even if we accepted Proctor's claim that section 704.10 addresses predicate felonies, Proctor

could not prevail. The "act" Proctor concedes participation in but seeks protection from—sexual abuse—involved a physical injury. The autopsy report, uncontradicted at trial, revealed proof of a linear tear, and Proctor's sperm, in the victim's rectum. Moreover, Proctor makes no attempt on appeal to assert compulsion as a defense to the predicate crime of willful injury. Proctor's admitted participation in one of the three crimes satisfied that essential element of murder. *See* Iowa Code § 707.2(2) ("The person kills another person while participating in a forcible felony.").

In short, Proctor has not established his entitlement to a compulsion defense to felony murder under the law as applied to the facts before us. The district court was correct in so ruling.

**B.  *Jury voir dire.*** During jury selection, defense counsel began displaying gruesome crime scene photos from *another* murder case. Counsel for the State immediately objected, and the parties made a record on the matter outside the presence of the jury. Insisting "a picture is truly worth a thousand words," counsel for Proctor argued he wanted to ask the jurors viewing the photos whether a case with this type of evidence was one "they [could] render a fair and impartial verdict on." The State countered that "show[ing] photographs of another case where equally gruesome things happened to people to try and prejudice this jury panel" was improper. The district court sustained the State's objection, ruling the display of unrelated, "horrendous" photographs was irrelevant to the selection of twelve impartial jurors.

On appeal Proctor claims the court acted upon emotion, not reason, in admonishing counsel and limiting voir dire. We disagree. "Control of jury voir dire is lodged in the sound discretion of the trial court." *State v. Reed*, 482 N.W.2d 672, 674 (Iowa 1992). Reversal is warranted only upon proof the court manifestly abused its discretion. *Id.* Proctor has not made that showing here. The court correctly assessed the purpose of voir dire—to find twelve persons who will fairly and impartially judge the facts

before them. Shocking potential jurors served no purpose toward that end. The court did not limit counsel's ability, by verbal description, to gauge the jurors' reaction to anticipated evidence in the State's case. Restricting the display of gruesome death scenes from some unrelated case falls clearly within the trial court's discretion.

### ■ C. *Jurors' exposure to material not in evidence.*

Proctor's final assignment of error stems from jurors' exposure to a document not in evidence. The State had successfully moved in limine to block Proctor's proffer of an offender "profile" prepared by state agents during the murder investigation. At trial Proctor urged the relevancy of the document, claiming the profile did not "fit" him and the jury should be allowed to consider it. The court received the profile during Proctor's offer of proof, but ultimately ruled it inadmissible. Subsequently, the document was included by mistake among the exhibits given to the jury. Proctor now argues the court abused its discretion in denying his motion for new trial based on the jurors' exposure to the profile evidence.

■ Our rules of criminal procedure authorize the grant of a new trial "[w]hen the jury has received any evidence, paper or document out of court not authorized by the court." Iowa R.Crim. P. 23(2)(b)(2). Based on objective facts elicited from the jurors concerning the alleged misconduct, the court may grant a new trial if (1) the acts or statements complained of exceed tolerable bounds of jury deliberation, and (2) the misconduct was calculated to, and with reasonable probability did, influence the verdict. *State v. Johnson,* 445 N.W.2d 337, 341 (Iowa 1989). Trial courts are vested with broad discretion in ruling on such matters. *Id.*

We recently considered these standards in *State v. Smith,* 573 N.W.2d 14 (Iowa 1997). *Smith* involved a juror who acknowledged that over a weekend recess she had read a newspaper account of the charges pending against the defendant. *Smith,* 573 N.W.2d at 18. Testimony revealed that the jury foreperson reminded the juror she should not consider the material, and the article was not discussed by the jury as a whole. Based on the record made, we affirmed the district court's finding that the juror's act was neither calculated to, nor did it, influence the verdict.

So also here, the record reveals no improper influence from the inadvertent submission of the profile report. When the jury foreman realized the report was among the other exhibits, he sent a note to the judge asking whether the report had been received into evidence. Upon learning that several jurors had either read or looked at the profile, the court questioned them individually to determine what prejudice, if any, had occurred. Eight jurors testified. When asked, each juror revealed little recollection of the document itself. Several remembered glancing at its cover page; a few recalled descriptions of the murder victim. Each agreed that any information gained could be put aside in reaching a verdict. Additionally, the court gave the following cautionary instruction: "Exhibit O was not received into evidence. It should not be considered by you in any way whatsoever in determining the guilt or innocence of Mr. Proctor."

■ We are convinced the court's prompt corrective measures were sufficient to prevent any prejudice to the defendant. A jury is presumed to follow the court's instructions. *State v. Simpson,* 438 N.W.2d 20, 21 (Iowa App.1989). Given that Proctor tendered the document in the first instance, he is in a poor position to claim its inadvertent submission was calculated to prejudice him. We reject his assertion that the court abused its discretion in failing to grant him a new trial on this ground.

**AFFIRMED.**