# IN THE COURT OF APPEALS OF IOWA

No. 17-2070
Filed January 9, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID LARRY UCHYTIL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buchanan County, George L. Stigler, Judge.

        A defendant appeals his conviction for domestic abuse assault causing bodily injury. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

A jury convicted David Uchytil of domestic abuse assault causing bodily injury based on evidence he shoved, struck, and strangled the mother of his children. Uchytil claims his conviction is invalid because he did not receive effective representation. He alleges his attorney should have sought recusal by the trial judge for "overintervention" in the parties' presentation of the case. We are unable to resolve this allegation on direct appeal. We affirm Uchytil's conviction, but preserve his ineffective-assistance-of-counsel claim for possible postconviction-relief (PCR) proceedings.

## I.     Facts and Prior Proceedings

Uchytil and Tracy have two daughters in common: T.R. and A.R. In September 2015, the older daughter, T.R., then eighteen, called 911 to report her dad was being "violent" with her mom.[1] When police officers arrived, Tracy told them Uchytil had struck her face, pushed her down on the floor, and placed his hand on her neck. The officers documented a red lump under Tracy's eye and red marks at her jaw line. Tracy recalled the injuries "hurt very badly." By contrast, Uchytil told the police "nothing physical" occurred during the argument.

The State originally charged Uchytil with aggravated misdemeanor domestic abuse assault, alleging he strangled Tracy. *See* Iowa Code §§ 708.2A(1), 708.2A(2)(d) (2015). After Uchytil waived his right to a speedy trial, the court approved numerous continuances. In September 2017, the State filed an amended trial information, reducing the charge to domestic abuse causing

---

[1] T.R. testified that she took her then two-year-old daughter and thirteen-year-old sister, A.R., upstairs when assaults began.

bodily injury, a serious misdemeanor.  *See* Iowa Code § 708.2A(2)(b).  Later that month, the case proceeded to a jury trial.  The State presented testimony from Tracy, T.R., and two police officers.

At trial, an issue arose concerning a possible witness, B.J.—a friend of Tracy's younger daughter, A.R.  Uchytil claimed B.J. was visiting Tracy's home during the incident.  After selecting the jury, the defense moved for a mistrial so it could investigate B.J.'s testimony.  The defense expected B.J. to impeach the version of events offered by Tracy and T.R.  Specifically, the defense anticipated B.J. would testify T.R. was upstairs with her boyfriend during her parents' argument and did not see Uchytil assault Tracy.

The district court denied the mistrial motion, expressing concern the case had already been pending for two years.  The court assured the defense it was free to call B.J. or T.R.'s boyfriend to testify for Uchytil.  But even after the mistrial ruling, the court seemed preoccupied with the state of the evidence on this issue. For example, during the State's case, the judge intervened in the direct examination of Tracy, suggesting:

> Before you leave this witness to cross-examination, I think it would be helpful to the jury if you would have the witness give explicit testimony as to what people were in the home, the locations of those individuals at the time of the alleged assault, who actually saw the alleged assault and things of that nature, so that the jury will have an ironclad understanding as to what she is testifying to.

The prosecutor complied with the court's suggestion, asking Tracy who was present at the time of the alleged assault and where those individuals were located.

After the testimony of Tracy and T.R., the court questioned T.R. outside of the presence of the jury about the identity of her boyfriend and where he could be contacted. The court then explained:

> The reason I asked those questions of the witness out of the hearing of the jury is to deal with that motion for a mistrial earlier this date. It seems clear that one of two things is true: That the two witnesses who have just testified will have committed perjury, or that the witness yet to come, [B.J.], will commit perjury if she testifies that she was there and that the boyfriend of [T.R.] was there.

The court told defense counsel, "You now have, because I just gave it to you on the record, the name of the boyfriend, where the boyfriend works, where the boyfriend is at this precise moment." From this premise, the court suggested defense counsel could subpoena the boyfriend at his job and "we can hear from the boyfriend as to whether he was or was not there."

As it turned out, the only defense witness was Uchytil.[2] Contradicting his statement to police at the scene, Uchytil admitted the fight was physical. But he claimed Tracy was the aggressor, hitting him from behind like he was "a football dummy." He acknowledged pushing her "one time" as he defended himself. At the close of Uchytil's direct testimony, the court asked: "Would you cover who was there at the time of this event, [defense counsel], please?" Counsel responded: "I'm not intending to ask Mr. Uchytil who was there." And the court responded, "All right. Cross-examination."

---

[2] Defense counsel spoke with both T.R.'s boyfriend and B.J., but opted not to call either to testify. The defense did make an offer of proof with then fifteen-year-old B.J., who recanted her earlier claim to have been at Tracy's house. B.J. told the court Uchytil urged her to "lie for him" and she did so because she was "scared of him."

The jury returned a guilty verdict. The court sentenced Uchytil to a 365-day jail term, with 185 days suspended. He now appeals his conviction, raising a single claim of ineffective assistance of counsel.

## II.    Standard of Review and Foundational Principles

We review ineffective-assistance claims de novo because the right originates in the Sixth Amendment and article I, section 9 of the Iowa Constitution. *State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011).

To prevail on appeal, Uchytil must show counsel breached an essential duty and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the first prong, Uchytil must prove his attorney's performance fell "below the standard demanded of a reasonably competent attorney." *See State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017) (quoting *Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008)). On the second prong, Uchytil must prove but for counsel's substandard performance, a different trial outcome was reasonably probable. *See id.* at 882. As our default mode, we preserve ineffective-assistance claims for PCR actions. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Preservation to develop the record is preferred when the challenged action or inaction by counsel may implicate trial tactics. *Id.*

On the underlying recusal issue, the district court "may take reasonable measures to insure that the evidence is intelligibly presented to the jury." *State v. Cuevas*, 288 N.W.2d 525, 533 (Iowa 1980). But the court must do so without assuming "the role of an advocate." *Id.* Even a "fleeting remark" by the trial judge "may carry great—even controlling—weight with the jury." *State v. Reed*, 482 N.W.2d 672, 675 (Iowa 1992). Our supreme court has cautioned trial judges

"overintervention in a trial may pose greater risk of prejudice than underintervention." *Id.*

### III. Analysis

Uchytil argues by suggesting lines of inquiry to counsel in front of the jury, the trial court "overstepped its bounds as a neutral and detached arbiter and became an advocate on behalf of the State." He contends, "[A] reasonable person would certainly have questioned the judge's impartiality in this case." *See State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994). Because defense counsel did not ask the trial judge to recuse himself after his interventions, Uchytil argues he received ineffective assistance.

The State counters Uchytil cannot show he was prejudiced by the trial court's actions or counsel's performance. In its estimation, the district court's interventions were "not overzealous." The State argues the jury would not have been able to infer any possible bias by the court's prompting of the attorneys to ask certain questions about the individuals present for the alleged assault.

The situation is not as black and white as argued by either party. We see more grey. Without witnessing the trial court's mannerisms or tone when intervening in the presentation of the parties' evidence, we cannot assume what the jurors would have inferred. *See Cuevas,* 288 N.W.2d at 533 (noting "facial expressions, gestures and voice modulation can be construed to evince an attitude or feeling toward a witness or party"). By the same token, we cannot presume defense counsel overlooked a meritorious objection without weighing it against the overall trial strategy. *State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018)

(requiring defendant to overcome strong presumption that challenged action by trial counsel might be "sound trial strategy").

We conclude additional record is necessary to address Uchytil's allegation against counsel. A PCR hearing would provide his trial attorney the chance to explain her decision not to seek recusal. The record is also undeveloped "as to any prejudice which may or may not have resulted from trial counsel's actions." *See State v. Shanahan*, 712 N.W.2d 121, 143 (Iowa 2006). Because the trial record lacks the details needed to address Uchytil's claim, we preserve it for a potential PCR action. *See id.*

**AFFIRMED.**