# IN THE COURT OF APPEALS OF IOWA

---

No. 24-2027
Filed May 27, 2026

---

**State of Iowa,**
Plaintiff–Appellee,
v.
**Robert Mitchell Farley,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Mills County,
The Honorable Jeffrey L. Larson, Judge.

---

**AFFIRMED**

---

Elizabeth K. Elsten, Spirit Lake, attorney for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Tabor, C.J., Langholz, J., and Vogel, S.J.
Opinion by Vogel, S.J.

**VOGEL, Senior Judge.**

A jury convicted Robert Farley of second-degree sexual abuse, third-degree sexual abuse, and willful injury resulting in bodily injury. *See* Iowa Code §§ 708.4(2), 709.3, 709.4 (2021). The district court sentenced him to up to twenty-five years in prison. Farley now appeals, raising four claims: (1) the district court erred in excluding evidence of the victim's past sexual behavior with him under Iowa Rule of Evidence 5.412; (2) the court erred in admitting improper vouching and character evidence; (3) the evidence was insufficient to support his convictions; and (4) the court erred in failing to merge his convictions of second-degree and third-degree sexual abuse.

On our review, we find no abuse of discretion in the district court's ruling excluding evidence under rule 5.412 or any reversible error in the court's other evidentiary rulings. Substantial evidence supports Farley's convictions, and his convictions of second-degree and third-degree sexual abuse do not merge. We therefore affirm.

## I. Background Facts and Proceedings.

Farley and the victim dated on and off for about three years. During that time, the victim lived in an apartment with her three children. Farley would sometimes spend the night at her apartment, but he lived separately. On December 15, 2021, after the victim learned that Farley impregnated another woman, the victim ended her relationship with Farley "for good."

According to the victim's testimony, at about 2:30 a.m. on December 18, 2021, she was sleeping in her upstairs bedroom while her two youngest children slept on the couch downstairs and the oldest was asleep in the basement. She was awakened by the sound of her apartment door opening and "someone coming up the stairs." Then, Farley opened her

bedroom door, "peeked his head in and said, 'Hey, Baby. I love you.'" After she asked him "what he was doing here," he came up to her "and started taking off his clothes, took off [her] pants, and then smacked [her] in the face." When she picked up her phone, Farley pushed it out of her hand, and it slid under her dresser. She "asked him to stop and go home," but "he wouldn't leave." And she "could smell alcohol on him."

The next thing the victim remembered was Farley slapping her in the face "over and over again," grabbing her by the hair, strangling her, and "forcing himself on" her while he asked if she liked "being raped, you fucking bitch." After about twenty minutes of forcible intercourse, the victim was able to "crawl off of the bed" and "got into the corner of [her] room." At that point, Farley was "still trying to assault" her, strangling her, and trying to "snap" her neck, until he "threw up all over." Farley then went back to the victim's bed and made her perform oral sex on him until he "passed out." The victim stayed in her bedroom with Farley the rest of the night because she "did not know if he woke up what would happen to [her] kids." When Farley woke up in the morning, he "forced himself on" her again.

Farley finally left the victim's apartment around 8:30 a.m. The victim told him to "have a nice life" as he walked out the door, then she laid in bed and "cried most of the day." Eventually, she called her mom and "told her everything that happened." She then went to the police station to report the incident and later to the emergency room for a sexual assault examination.

The State charged Farley with six offenses: one count of first-degree sexual abuse—a class "A" felony; two counts of second-degree sexual abuse—class "B" felonies; one count of first-degree burglary—a class "B" felony; and two counts of willful injury—a class "C" felony and a class "D" felony. *See* Iowa Code §§ 708.4, 709.1, 709.2, 709.3, 713.1, 713.3.

The case went to jury trial in November 2024. The State presented testimony from the victim, the police officer who interviewed her, the nurse who conducted her sexual assault examination, and several other witnesses, along with photos of the victim's injuries taken at the police station and the hospital.

Farley testified in his own defense. According to his testimony, he had permission to enter the victim's apartment, the sex acts "were all consensual," and he did not cause any of her injuries. He also said that he "had a few cocktails" that night, but he was "probably not drunk," although he got sick and threw up after giving the victim oral sex.

The jury found Farley guilty of one count of second-degree sexual abuse (as a lesser-included offense of first-degree sexual abuse), one count of third-degree sexual abuse (as a lesser-included offense of second-degree sexual abuse), and one count of willful injury resulting in bodily injury. *See* Iowa Code §§ 708.4(2), 709.3, 709.4. The jury acquitted him of the three other charges. The district court sentenced him to concurrent, indeterminate prison terms totaling twenty-five years with a seventy-percent mandatory minimum and a lifetime special sentence under Iowa Code section 903B.1.

Farley appeals, raising challenges to several evidentiary rulings, a sufficiency-of-the-evidence challenge, and a merger issue.

## II. Standards of Review.

"We review rulings on the admissibility of evidence under the rape shield law, Iowa Rule of Evidence 5.412, for abuse of discretion." *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021). We also review other evidentiary rulings for abuse of discretion. *State v. Fontenot*, 958 N.W.2d 549,

4

555 (Iowa 2021).  We will find an abuse of discretion only "if the grounds or reasoning for [the court's ruling] were clearly untenable or clearly unreasonable."  *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021) (cleaned up).

"We apply a de novo standard of review to claimed violations of the constitutional right to present a defense and the Sixth Amendment right to confrontation."  *Montgomery*, 966 N.W.2d at 649 (internal citations omitted).

We review sufficiency-of-the-evidence challenges "for the correction of errors at law, viewing the evidence in the light most favorable to the State."  *State v. Brown*, 996 N.W.2d 691, 695–96 (Iowa 2023).  "In doing so, we are bound by the jury's verdict if it is supported by evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt."  *Id.* at 696 (cleaned up).  "We also review claims of an illegal sentence involving merger for the correction of errors at law."  *Id.*

## III.  Analysis.

### A.  Rape Shield Evidence.

Farley first argues that the district court erred in excluding evidence of the victim's past sexual behavior with him under Iowa Rule of Evidence 5.412.  The purpose of that rule, Iowa's rape shield law, "is to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters."  *State v. Trane*, 934 N.W.2d 447, 456–57 (Iowa 2019) (citation omitted).  The rule "substantially limits the admission of evidence of specific instances of a complaining witness's other sexual behavior."  *Id.* at 456.  It

5

"presupposes that much evidence which the accused wishes to place before a jury will be excluded." *Id*. at 457 (citation omitted).

Before trial, Farley filed a notice of his intent to introduce evidence under rule 5.412(b)(1)(B) and (C), including "evidence of specific incidents of [the] victim's sexual behavior with respect to [Farley] for the purpose of proving consent of the sexual actions done that day." The notice stated that "[s]pecific sexual acts between the Defendant and the accuser include anytime that they were dating as well as text messages provided to the State regarding their sexual life and sexual conduct including rough sex." It also stated that "this evidence shall be used to show that the sexual encounters between the Defendant and the accuser consents specifically [to] acts of rough sex/rape fantasy." The State filed a motion in limine seeking to exclude such evidence.

At a pretrial hearing, Farley's counsel stated that he did not plan to introduce any text messages in his case in chief, but he may use them for impeachment. The prosecutor responded that she had "received voluminous amounts" of text messages, but she did not know which specific messages Farley intended to introduce. Likewise, the court stated that it had "not viewed any text messages" being considered by the defense. The court noted that it would allow evidence that Farley and the victim "had sexual relations" and "were in a consensual relationship in the past" as an exception to rule 5.412. The court also noted that Farley could argue the "sex incident in question that date was consensual." But the court explained that "without any other specific instances in front of me, I'm not able to rule with any further definitive nature."

The court revisited the issue outside the presence of the jury at the beginning of trial. After additional comments by Farley's counsel and the

6

State, the court granted the State's motion in limine "as to the victim's other sexual activity or behavior." But the court added,

> You can ask questions about them being sexually active, yes. I think the part that I'm going to draw a line at is that you try to bring in the idea that the rough sex in the past was consensual and shows propensity for that. . . . I'm willing to revisit it throughout the testimony; but at this point, I have zero evidence or exhibits that show or indicate or hint at her consenting to anything like that.

On appeal, Farley reiterates that the district court should have admitted his proposed evidence of the victim's past sexual behavior under rule 5.412(b)(1)(B) and (C). As for the exception under rule 5.412(b)(1)(B), Farley contends that his text messages with the victim were admissible to show her "desires" and "specifically what she wanted [Farley] to do to her sexually as evidence for consent and to rebut the claim that what happened to her that night was different than their prior sexual encounters." As for the exception under rule 5.412(b)(1)(C), Farley claims that excluding "all evidence and questioning with respect to the [victim's] and Farley's sexual history . . . was in error as it violated his due process right to a fair trial," including his "right to present a defense and his Sixth Amendment right to confront the witnesses against him." He compares his case to *State v. Montgomery*, where our supreme court held that the defendant should have been allowed to cross-examine the child victim and a teenaged witness for the prosecution "about their relationship as a source of [the victim's] age-inappropriate sexual knowledge and their bias or motive to testify against the defendant," and that excluding such "evidence violated the defendant's rights under the Confrontation and Due Process Clauses and the constitutional rights exception to the rape shield law." 966 N.W.2d at 646.

The State counters that the district court properly excluded Farley's proposed evidence because he "did not adequately present the court with the evidence he wished to admit beyond speculation."

As Farley acknowledges in his brief, it "is unclear what the text messages exactly stated as they were never entered as evidence or made a part of the court file." When the court asked Farley's counsel point-blank if there were "specific text messages that [he] want[ed] the Court to refer to in considering" whether to admit the evidence, Farley's counsel replied, "Well, no." With that, we find the court correctly ruled that the text messages were inadmissible under rule 5.412 to prove the victim consented to "rough sex" on the night in question without any "evidence or exhibits that show or indicate or hint at her consenting to anything like that" in the past. *See* Iowa R. Evid. 5.412(b)(1)(B) (allowing the court to admit evidence only "of *specific instances* of a victim's sexual behavior with respect to the person accused of sexual misconduct, if offered by the defendant to prove consent" (emphasis added)). In addition, and in spite of the court's assurance that it was "willing to revisit" its ruling "throughout the testimony," Farley never attempted to offer any specific text messages or impeach the victim's testimony with them.

Moreover, the victim testified on cross-examination that she and Farley "were sexually active" during their relationship, including "three days before this incident." Therefore, the jury heard evidence of the victim and Farley's prior consensual sexual relationship.

On this record, we find no abuse of discretion in the district court's refusal to admit Farley's proposed evidence under rule 5.412(b)(1)(B) or (C). Nor has Farley shown that his constitutional rights were violated by the exclusion of such evidence. *Cf. Montgomery*, 966 N.W.2d at 654 (noting that the constitutional-rights exception to the rape shield rule is "a high bar

8

requiring the defendant to show that the evidence in question is essential to the presentation of his defense" (cleaned up)).

## B. Vouching and Character Evidence.

Farley next argues that the district court erred in admitting improper vouching and character evidence through the testimony of two of the State's witnesses and the State's cross-examination of him.

**Vouching Testimony.** "It is well-settled law in Iowa that a bright-line rule prohibits the questioning of a witness on whether another witness is telling the truth." *Bowman v. State*, 710 N.W.2d 200, 204 (Iowa 2006). In that vein, expert witness testimony is inadmissible if it directly or indirectly vouches for "the credibility of a victim in a criminal sex abuse proceeding," thereby commenting on a defendant's guilt or innocence. *State v. Dudley*, 856 N.W.2d 668, 676–78 (Iowa 2014) (holding expert's testimony that "a child's physical manifestations or symptoms [were] consistent with sexual abuse trauma" was inadmissible because it allowed "the expert witness to indirectly vouch that the victim was telling the truth"); *see also State v. Jaquez*, 856 N.W.2d 663, 665–66 (Iowa 2014) ("[W]hen an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility . . . .").

Farley contends that the testimony of two of the State's witnesses—the police officer who interviewed the victim and the nurse who conducted her sexual assault examination—impermissibly vouched for the victim's credibility. First, the prosecutor asked the police officer, "In your training and experience as a law enforcement [officer], was the demeanor of [the victim] consist[ent] of that of a victim of sexual assault?" The officer

answered, "Yes." Then, the prosecutor asked, "In your training and experience as a law enforcement officer, was the behavior of [the victim] consistent with that of a victim of sexual assault?" The officer again answered, "Yes."

The State now concedes that under *Dudley*, "the officer should have been precluded from testifying that the victim's demeanor and behavior was consistent with that of a sex abuse victim." *See* 856 N.W.2d at 676–78. But the State urges that the district court's error in admitting this testimony was harmless. "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ." Iowa R. Evid. 5.103(a). "In cases of nonconstitutional error, we start with the presumption that the substantial rights of the defendant have been affected." *Dudley*, 856 N.W.2d at 678. "The State has the burden to affirmatively establish the substantial rights of the defendant were not affected." *Id.* And we consider various factors to determine if the error was harmless. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) ("[W]e consider a variety of circumstances in determining the existence of harmless error, including the existence of overwhelming evidence of guilt."); *State v. Skahill*, 966 N.W.2d 1, 16 (Iowa 2021) ("Another way the State may potentially overcome the presumption of harm is by showing that the wrongly admitted evidence was cumulative."). Harmless error "is established when the record shows that the challenged evidence did not impact on the jury's finding of guilt." *State v. Nims*, 357 N.W.2d 608, 609 (Iowa 1984).

Upon our review of the record, we find that the State has established the improper admission of the police officer's testimony was harmless. Unlike the experts whose testimony was challenged in *Dudley*, the police officer here did not purport to have any specialized knowledge of the typical

behaviors or demeanor of sexual abuse victims besides his "training and experience as a law enforcement officer." *Cf.* 856 N.W.2d at 673 (describing testimony of board-certified psychologist and forensic interviewer). And as the State points out, the officer's vouching "testimony was brief and was not revisited." As for other evidence of Farley's guilt, the State presented the victim's testimony along with many photos of her injuries, which corroborated her account of the incident. What's more, the jury acquitted Farley of three of the six charges—including one of the counts of sexual abuse. *Cf. State v. Rodriguez*, 636 N.W.2d 234, 243 n.4 (Iowa 2001) ("If the jury in this case had been motivated to overwhelming hostility toward the defendant by the prior acts evidence, it seems likely the jury would have convicted the defendant of the attempted murder charge. To the contrary, the jury acquitted [him] of this offense, which was the most serious charge on which he was tried."). We do not find that the officer's brief testimony about the victim's demeanor and behavior impacted the jury's finding of guilt. Therefore, Farley is not entitled to a new trial on this ground as to the police officer's responses to the prosecutor's questions.

Farley also claims that the nurse who conducted the victim's sexual assault examination vouched for her credibility. The nurse described the victim's injuries, including bruising and scratches on her breasts, bruising on her face, "petechiae under her chin," and "missing hair on her scalp." The prosecutor then asked, "[I]n your experience as a sexual assault forensic nurse, are these injuries consistent with sexual assault?" The nurse answered, "These injuries are consistent with the patient's statement." Unlike the police officer's challenged testimony, the nurse's challenged testimony concerned the victim's physical injuries—not her demeanor or behavior. This testimony was not impermissible vouching. *See State v. Jurgens*, No. 23-1820, 2025 WL 1177311, at *3 (Iowa Ct. App. Apr. 23, 2025)

11

(rejecting vouching claim where sexual assault nurse examiner testified "about a physical injury to the child and not[ed] that it was consistent with the history provided by the child," rather than testifying "about the child's behavior or psychological trauma"); *State v. Basquin*, No. 17-0057, 2018 WL 1858378, at *2 (Iowa Ct. App. Apr. 18, 2018) (rejecting vouching claim where a "nurse practitioner opined the injuries [the victim] sustained could be consistent with the narrative she gave at the time"). We therefore find no abuse of discretion in the district court's admission of this testimony over Farley's objection.

**Character Evidence.** Farley next claims that two of the State's lines of questioning during cross-examination violated the court's ruling on his motion in limine and called for inadmissible character evidence. *See* Iowa Rs. Evid. 5.404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."), 5.404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

During cross-examination, Farley admitted he "had a few cocktails" on the night of the incident and that he vomited after one of the sex acts. However, he claimed he was not "legally intoxicated like .08." The prosecutor then asked Farley broader questions about his alcohol use, AA attendance, and prior alcohol and substance-use treatment, all drawing defense objections based on relevance under Iowa Rule of Evidence 5.403.

Farley now claims that the prosecutor used the line of questioning about his alcohol use as "a way around" the court's ruling on his oral motion in limine. While he concedes that "the evidence of intoxication is relevant to

the night of December 18, [2021]," he contends that "the shift into a practice of being a drunk or blackout binge drinking is irrelevant [and] prejudicial."

First, we reject Farley's claim that the prosecutor violated the court's ruling on his motion in limine. The court had prohibited the State from using Farley's statements made in a prior guilty-plea proceeding as impeachment evidence during his trial testimony. *See* Iowa R. Evid. 5.410(a)(1), (4). The State indicated that it intended to use Farley's prior conviction for operating while intoxicated to impeach his testimony if he "denie[d] his excessive drinking." But the prosecutor did not actually mention Farley's prior conviction during cross-examination. Nor did the prosecutor mention the prior guilty-plea proceeding. Therefore, this claim is not supported by the record.

Second, we find no abuse of discretion in the district court's rulings on Farley's objections to the prosecutor's questions.[1] "Relevance is a relatively low bar." *State v. Thoren*, 970 N.W.2d 611, 622 (Iowa 2022) (cleaned up); *see also* Iowa R. Evid. 5.401. The court may only exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Iowa R. Evid. 5.403. The district court overruled Farley's relevance objections to the prosecutor's questions about whether he gets "blackout drunk" and how long he has "been in AA." But the court sustained his objection based on "relevance and 403" when the prosecutor asked if Farley "just went" to alcohol-use

---

[1] Those questions were: "Do you get blackout drunk?"; "Where you don't remember things the next day[?]"; "How long have you been in AA?"; and, "[I]f you're not drinking over the legal limit and not getting blackout drunk, you just went [to alcohol-use treatment] because you didn't want to drink?"

treatment "because [he] didn't want to drink." The prosecutor then moved on to a different topic. On our review, we do not find these rulings to be clearly untenable or unreasonable. Farley is not entitled to a new trial on this ground. *See Goodson*, 958 N.W.2d at 798.

Farley also complains about the prosecutor's later question, "Do you have a relationship with your child?" The court sustained his counsel's objection to that question, and he did not answer. The prosecutor then asked, "Now would you suggest that you're a truthful individual?" Defense counsel again objected, the prosecutor withdrew the question, and Farley did not answer. Farley claims that this "questioning alone was prejudicial and was only asked in an attempt to make [him] look like a bad person." But the court instructed the jurors that "questions and comments by the lawyers" are not evidence, and the jurors "shall base [their] verdict only upon the evidence and these instructions." *See State v. Proctor*, 585 N.W.2d 841, 845 (Iowa 1998) ("A jury is presumed to follow the court's instructions."). Farley did not answer either question—therefore, no improper evidence was admitted. After a review of the prosecutor's questions as to Farley's character, we find no reversible error in any of the district court's evidentiary rulings.

## C. Sufficiency of the Evidence.

We next address Farley's challenge to the sufficiency of the evidence.[2] Farley insists that "the record does not support sufficient evidence to

---

[2] Farley frames this issue as "whether the verdict was against the great weight of the evidence and whether the evidence supported a conviction to sexual abuse in the 2nd degree or willful injury causing bodily injury." But he cites the standard of review and case law concerning a sufficiency-of-the-evidence challenge rather than a weight-of-the-evidence challenge. *See State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998) (explaining "the difference between the weight of the evidence and the sufficiency of the evidence").

overcome the standard of beyond a reasonable doubt for any crime alleged."
He points to his counsel's "summary of the evidence or lack thereof" in his
closing argument and attacks the victim's credibility, asserting that she
fabricated her allegations against him. But on appellate review, we do not
resolve conflicts in the evidence, assess witness credibility, decide the
plausibility of explanations, or weigh the evidence—such matters are for the
jury. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). We are bound by the
jury's verdict if it is supported by substantial evidence. *State v. Slaughter*, 3
N.W.3d 540, 546 (Iowa 2024). "Evidence is substantial if it is sufficient to
convince a rational trier of fact the defendant is guilty beyond a reasonable
doubt." *Id.* (cleaned up). "We view the evidence in the light most favorable
to the State, including legitimate inferences and presumptions that may fairly
and reasonably be deduced from the record evidence." *Id.* (cleaned up).

Viewing the record in this light, we find that substantial evidence
supports Farley's convictions. The victim gave a detailed account of the
incident. She testified that Farley forced her to engage in intercourse and oral
sex against her will. She testified that he physically assaulted her at the same
time by repeatedly slapping her in the face, grabbing her by the hair,
strangling her, and trying to "snap" her neck. Her testimony alone was
substantial evidence of Farley's guilt, and no corroboration was required. *See*
*State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021) ("A sexual abuse victim's
testimony alone may be sufficient evidence for conviction."). Added to the
victim's testimony were the many photos of her injuries, which corroborated
her account of the incident. The State also presented expert testimony that

And he did not file a motion for new trial. *See* Iowa R. Crim. P. 2.24(2)(b)(7) (permitting
new trial when "the verdict is contrary to law or contrary to the weight of the evidence").
We agree with the State that Farley presents a sufficiency-of-the-evidence challenge and
review his claim accordingly.

strangulation can "create a substantial risk of death at the time that it occurs." Based on this evidence and all legitimate inferences that could be drawn from it, a rational jury could find that the State proved the elements of second-degree sexual abuse, third-degree sexual abuse, and willful injury resulting in bodily injury beyond a reasonable doubt. We affirm Farley's convictions.

### D. Merger.

Finally, Farley claims the district court erred in failing to merge his convictions for second-degree and third-degree sexual abuse. The merger statute, Iowa Code section 701.9, provides:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

"This statute prevents a person from being twice convicted for the same offense, but it does not apply when there are separate offenses." *State v. Greenland*, 17 N.W.3d 347, 351 (Iowa 2025); *see also State v. Spilger*, 508 N.W.2d 650, 651–52 (Iowa 1993) ("Where the alleged acts occur separately and constitute distinct offenses there can be no complaint that one is a lesser included offense of the other.").

Farley contends that his convictions for the two counts of sexual abuse should merge "because there was an absence of any specific jury finding that [he] completed two separate acts constituting sexual assault."[3] However, our

---

[3] Farley cites our court's opinion in *State v. Watkins* to support this argument. *See* No. 22-1968, 2024 WL 5152370, at *8–9 (Iowa Ct. App. Dec. 18, 2024). There, we held that the defendant's convictions of two counts of assault causing bodily injury merged in "the absence of any specific jury finding that [he] completed two separate acts

supreme court has rejected a similar challenge. In *State v. Constable*, the defendant was convicted of five counts of sexual abuse. 505 N.W.2d 473, 477 (Iowa 1993). In rejecting the defendant's double-jeopardy claim, our supreme court found that he "engaged in five distinct acts of physical contact; each contact alone met the definition of 'sex act' and each contact alone would be sufficient to charge [the defendant] with one count of sexual abuse." *Id.* at 478. Similarly, our court has found that a defendant's convictions of two counts of sexual abuse did "not offend the merger doctrine or the Double Jeopardy Clause" where the "case was tried and submitted to the jury as two separate sex acts involving different body parts" of the defendant and the victim. *Bryson v. State*, 886 N.W.2d 860, 867 (Iowa 2016).

Here, the State's trial information—which the prosecutor read to the jury at the start of trial—charged Farley with three counts of sexual abuse. Under Count I, the State charged Farley with first-degree sexual abuse by committing sexual abuse causing serious injury. Under Count II, the State charged Farley with second-degree sexual abuse by performing a sex act with the victim by "penetration of the penis into the vagina or anus." Under Count III, the State charged Farley with second-degree sexual abuse by performing a sex act with the victim by "contact between the mouth of one person and the genitalia of another person." To support the separate counts, the victim testified that Farley forced her to engage in both vaginal intercourse and oral sex—two distinct sex acts—consistent with the

_____

constituting" two assaults. *Id.* at *8. We also held that the defendant's convictions of second-degree sexual abuse and willful injury causing serious injury did not merge because the offenses target distinct assaultive behavior. *Id.* at *8–9. But *Watkins* did not address the merger of two counts of sexual abuse involving different sex acts. Therefore, we find *Watkins* distinguishable from Farley's case.

allegations in the trial information. *See* Iowa Code § 702.17 (defining the term "sex act"). Furthermore, the jury found Farley guilty of two different counts of sexual abuse: second-degree sexual abuse (as a lesser-included offense under Count I) and third-degree sexual abuse (as a lesser-included offense under Count II).

Because the State charged—and the evidence presented at trial supported—multiple counts of sexual abuse based on at least two separate sex acts, we conclude that Farley's convictions of second-degree and third-degree sexual abuse do not violate the merger statute. *See Constable*, 505 N.W.2d at 477–78; *Bryson*, 886 N.W.2d at 866–67.

## IV. Conclusion.

In sum, we find no abuse of discretion in the district court's ruling excluding evidence of the victim's past sexual behavior under Iowa Rule of Evidence 5.412 and no reversible error in the court's other evidentiary rulings. Substantial evidence supports Farley's convictions, and his convictions of second-degree and third-degree sexual abuse do not merge. Therefore, we affirm.

**AFFIRMED.**